A-533-893
Remand
Court No. 21-00007
POI:  10/01/2018-09/30/2019
**Public Document**
E&C/OI:  Team

***Ellwood City Forge Company, et al. v. United States*,**
**Court No. 21-00007 (CIT October 29, 2021)**

**FINAL RESULTS OF REDETERMINATION**
**PERSUANT TO COURT REMAND**

## I.     SUMMARY

The Department of Commerce (Commerce) prepared these final results of

redetermination in accordance with the remand order from the U.S. Court of International Trade

(the Court) in *Ellwood City Forge Company, Ellwood National Steel Company, Ellwood Quality*

*Steels Company, And A. Finkl & Sons v. United States*, Court No. 21-00007 (CIT October 29,

2021) (*Remand Order*).  These final results of redetermination concern Commerce's final

determination in the less-than-fair-value (LTFV) investigation of forged steel fluid end blocks

(fluid end blocks) from India.[1]

In the *Remand Order*, the Court suggested that Commerce may wish to consider

conducting on-site verification to comply with the statutory verification obligations, and further

that Commerce could consider requesting a voluntary remand in similar investigations for the

same purpose.[2]

Consistent with the Court's *Remand Order*, Commerce reconsidered its use of a

questionnaire in lieu of on-site verification and subsequent application of facts otherwise

---

[1] *See Forged Steel Fluid End Blocks from India:  Final Negative Determination of Sales at Less Than Fair Value*, 85 FR 80003 (December 11, 2020) (*Final Determination*), and accompanying Issues and Decision Memorandum (IDM).
[2] *See Remand Order* at 5-6.

available.  These final results of redetermination resulted in no changes to the *de minimis*

estimated weighted-average dumping margin calculated in the *Final Determination*.

## II.   BACKGROUND

On December 11, 2020, Commerce published the final determination in the LTFV

investigation of fluid end blocks from India.[3]  In the *Final Determination*, Commerce determined

that fluid end blocks from India are not being, or are not likely to be, sold in the United States at

LTFV for the period of investigation October 1, 2018, through September 30, 2019.[4]

The petitioners[5] challenged Commerce's *Final Determination* and argued that

Commerce's decision not to conduct an on-site verification and its consequent determination of a

*de minimis* estimated weighted-average dumping margin were unsupported by substantial

evidence and contrary to law.[6]  In response, Commerce filed a motion for a voluntary remand

without confessing error, seeking leave to reconsider the use of a "questionnaire in lieu of on-site

verification and the subsequent application of facts available."[7]  On October 29, 2021, the Court

granted Commerce's request for a voluntary remand.

## III.   DISCUSSION

### 1.   Commerce's *Final Determination*

On July 23, 2020, Commerce published the preliminary determination in the LTFV

investigation of fluid end blocks from India.[8]  On August 5, 2020, the petitioners filed comments

---

[3] *See Final Determination.*

[4] *Id.*

[5] The petitioners are the FEB Fair Trade Coalition; Ellwood Group (comprised of Ellwood City Forge Company; Ellwood Quality Steels Company; and Ellwood National Steel Company); and A. Finkl & Sons, Company (collectively, the petitioners).

[6] *See Remand Order* at 2.

[7] *Id.*

[8] *See Forged Steel Fluid End Blocks from India: Preliminary Negative Determination of Sales at Less Than Fair Value and Postponement of Final Determination*, 85 FR 44517 (July 23, 2020) (*Preliminary Determination*), and accompanying Preliminary Decision Memorandum.

regarding the *Preliminary Determination*.[9]  The petitioners noted that because Covid-19 would prevent Commerce from conducting on-site verification, Commerce should issue a "verification outline" to Bharat Forge Limited (Bharat) and include questions that the petitioners stated are "designed to impeach the responses already provided on the record."[10]  On September 2, 2020, Commerce issued a "Questionnaire in Lieu of Verification" to Bharat, which included questions based on the Petitioner's Post-Prelim Comments and stated:

> We are issuing this questionnaire in lieu of performing an on-site verification. The purpose of this questionnaire is to probe information that you have already submitted – not to obtain new information.  Accordingly, the questions are similar to those that the Department of Commerce (Commerce) would normally ask during an on-site verification.[11]

In the *Final Determination* Commerce stated,

> Commerce was unable to conduct on-site verification of the information relied upon in making its final determination in this investigation, as provided for in section 782(i) of the Act.  However, we took additional steps in lieu of on-site verification and requested additional documentation and information.  Pursuant to section 776(a)(2)(D) of the Act, in situations where information has been provided, but the information cannot be verified, Commerce will use "facts otherwise available" in reaching the applicable determination. Accordingly, we relied on the information submitted on the record as facts available in making our final determination, except as detailed in the Analysis of Comments section, below.[12]

---

[9] *See* Petitioners' Letter, "Forged Steel Fluid End Blocks from India: Petitioner's Comments Following Preliminary Determination," dated August 5, 2020.

[10] *Id.* at 26.

[11] *See* Commerce's Letter to Bharat, dated September 2, 2020 (Questionnaire In Lieu of Verification).

[12] *See Final Determination* IDM at 2 -3; *id.* at 11 ("As noted above, Commerce was unable to conduct on-site verification of the information relied upon in making its final determination in this investigation, as provided for in section 782(i) of the Act.  Accordingly, we relied on the information submitted on the record as facts available in making our final determination.").  Specifically, Commerce applied partial facts available pursuant to section 776(a)(1) of the Act because it did not have the necessary information on the record in the following situations: (1) For Net Weight, it assigned the highest reported net weight from any product to the merchandise under consideration (MUC) products and recalculated the submitted allocation factors accordingly.  Based on the revised allocation factors, it adjusted the conversion costs for the MUC cost of manufacturing (COM); (2) For the Costs for Certain Parts, it added the highest reported costs for certain parts from any product control number (CONNUM) to the COM for one CONNUM that reported no parts costs for certain parts; and (3) For U.S. sales of two specific CONNUMs, it included these U.S. sales in the dumping analysis and applied the highest transaction-specific dumping margin to these U.S. sales.  *See Final Determination* IDM at 5, 8, 9, and 11.

2.  **Analysis**

Commerce requested a voluntarily remand, without confessing error, with respect to the "Questionnaire in Lieu of Verification" and the subsequent application of facts available. We reconsidered our use of a questionnaire in lieu of on-site verification and no longer find that we were unable to verify Bharat's information. As such, there is no longer a reason for Commerce to rely on "facts otherwise available" in reaching its final determination outside of the specific instances where Commerce applied partial facts available, and Commerce is rescinding all language in the *Final Determination* stating that it was relying on "facts otherwise available" pursuant to section 776(a)(2)(D) of the Tariff Act of 1930, as amended, (the Act) because the information could not be verified.[13] Commerce issued a questionnaire requesting additional information from Bharat in lieu of performing an *on-site* verification, but this procedure nevertheless satisfies the verification requirement under section 782(i) of the Act. With the exception of certain specific instances in which Commerce applied partial facts available (as detailed in footnote 12), we do not find it necessary to rely on facts otherwise available.

IV.   **INTERESTED PARTY COMMENTS**

On December 6, 2021, Commerce released its Draft Results of Redetermination and invited interested parties to comment.[14] On December 13, 2021, we received comments from the petitioner and Bharat.[15] These comments are summarized below.

---

[13] *See Final Determination* IDM at 2-3.

[14] *See* Draft Results of Remand Redetermination, *Ellwood City Forge Company, et al. v. United States,* Court No. 21-00007 (CIT October 29, 2021), dated December 6, 2021 (Draft Results of Redetermination).

[15] *See* Petitioner's Letter, "Forged Steel Fluid End Blocks from India: Petitioner's Comments on Commerce's Draft Results of Redetermination," dated December 13, 2021 (Petitioner's Comments); *see also* Bharat's Letter, "Forged Steel Fluid End Blocks from India: Comments on Draft Remand Redetermination," dated December 13, 2021 (Bharat's Comments).

*Petitioner's Comments*

- The Court's intention was for Commerce to perform on-site verification to moot all "procedural issues created by the agency's decision to short-circuit verification."[16]

- Commerce did not address the plaintiffs' issues briefed before the CIT and instead failed to explain the verification procedures the Court found to be "short-circuit{ed}."[17]

- Commerce's only change was its retraction of Bharat's unverified data as "facts otherwise available" in the *Final Determination*, and its rationalization of its "questionnaire in lieu of verification" was unsupported.[18]

- Commerce's Draft Results of Redetermination did not address Commerce's failure to conduct in-person verification and issue a verification report, as required under section 782(i) of the Act, 19 CFR 351.307(b)-(d), and the Statement of Administrative Action Accompanying the Uruguay Round Agreements Act, H.R. Doc. 103-316, vol. 1 (1994) (SAA) at 868.[19]

- There was no explanation why a questionnaire "in lieu of verification" was the best alternative methodology available, or an opportunity for party input prior to its implementation.[20]

- Commerce did not explain its change in position with respect to section 782(i) of the Act requiring on-site verification, but redetermined that the "questionnaire in lieu of

---

[16] *See* Petitioner's Comments at 2 (citing Remand Order at 4-5).
[17] *Id.* at 3.
[18] *Id.*
[19] *Id.*
[20] *Id.* at 3-4.

verification" now satisfies the exact same section of the act, and the information utilized by Commerce remains unverified.[21]

- Commerce refuses to resume in-person verification, even though a Court order contemplated a verification could occur.[22]

- The Covid-19 vaccine has rendered the risk of verification "comparable to other long-accepted risks of illness, particularly for persons not demographically at a high risk of severe COVID."[23]

- The European Union (EU), Government of Brazil (GOB), and U.S. Customs and Border Protection (CBP) have resumed in-person trade verifications, while Canada conducts lengthy week-long virtual verifications:[24]

  - Between August 30, 2021, and September 2, 2021, CBP conducted verification in the Dominican Republic as part of its Enforce and Protect Act investigation in case number 7550.

  - The EU has resumed in-person verification of its antidumping investigation of corrosion-resistant steel from Russia and Turkey.

  - GOB is undertaking in-person verification in its antidumping investigation of liquid caustic soda from the United States.

- Commerce should extend the remand redetermination until the presumptive incoming Assistant Secretary can decide on the issue of Commerce's failure to undertake required in-person verifications and its legal obligations.[25]

---

[21] *Id.*
[22] *Id.* at 5.
[23] *Id.* at 4 (citing *Remand Order* at 5).
[24] *Id.* at 4-5.
[25] *Id.* at 6.

*Bharat's Comments*

- Bharat agrees with Commerce's Draft Results of Redetermination and its finding that the questionnaire in lieu of on-site verification satisfies the verification requirement under 782(i) of the Act, and it is not necessary to rely on facts otherwise available.[26]

**Commerce's Position:**  Commerce performed verification of Bharat's sales and cost information in accordance with the petitioner's requests and in accordance with 782(i) of the Act.  We disagree with the petitioner that the questionnaire did not satisfy our verification requirements in accordance with 782(i) of the Act.  The statute gives Commerce wide latitude in its verification procedures; in fact, Congress has implicitly delegated to Commerce the latitude to derive verification procedures *ad hoc*.[27]  During the investigation, the petitioner understood the limitations of on-site verification in accordance with 19 CFR 351.307(b)-(d) due to the Covid-19 pandemic and requested a questionnaire in lieu of on-site verification.  The petitioner stated after the *Preliminary Determination* that "if Commerce determines that more factfinding is necessary, it should examine such information through verification or a verification outline."[28]  Following the *Preliminary Determination*, Commerce determined that it required further information from Bharat in accordance with the petitioner's post-preliminary questions regarding Bharat's sales and cost information.  Specifically, Commerce's post-preliminary questionnaire, or the "Questionnaire in Lieu of Verification" included the petitioner's questions regarding Bharat's sales and cost information.[29]  Moreover, the petitioner's counsel was satisfied with the "Questionnaire in Lieu of Verification,"  and stated during the public hearing that "while a live

---

[26] *See* Bharat's Comments at 2.
[27] *See Goodluck India Limited v. United States*, 11 F.4th 1335, 1344 (Fed. Cir. Aug. 31, 2021) ("Commerce enjoys "broad discretion" to promulgate and enforce its procedural rules"); *see also Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997); *Am. Alloys v. United States*, 30 F.3d 1496, 1475 (Fed. Cir. 1994); and *Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*, 25 C.I.T. 1150, 1157 (2001).
[28] *See* Petitioner's Post-Prelim Comments at 23.
[29] *Id*. at 23-25; *see also* Questionnaire in Lieu of Verification.

verification couldn't be possible, thankfully, you have issued verification questionnaires to Bharat Forge, and conducted what is in effect a virtual verification."[30]  Commerce has no obligation to explain why the "Questionnaire in Lieu of Verification" was the best available alternative to on-site verification, only that it was a reasonable alternative.[31]

Commerce also disagrees with the petitioner that the "Questionnaire in Lieu of Verification" was "short-circuited."  Neither the Court nor the petitioner cited deficiencies with the questionnaire issued to Bharat.  As stated above, the questionnaire was designed to "probe information… already submitted – not to obtain new information," in accordance with the petitioner's post-preliminary requests.[32]  Moreover, the petitioner stated in its case brief and in the public hearing that the questionnaire achieved the petitioner's desired results of verification in that Bharat had "failed verification."[33]  Commerce respectfully notes again that "{i}n this investigation, we find that Bharat cooperated, in general, with Commerce's multiple requests for information by timely responding to Commerce's questionnaires, including the Questionnaire in Lieu of Verification."[34]  Overall, the petitioner agreed with the issuance of a questionnaire and did not identify deficiencies with the questionnaire because it was issued at the petitioner's request and reflected the specific issues of concern identified by the petitioner.

Commerce disagrees with the petitioner that it is required to conduct an in-person, on-site verification in accordance with 782(i) of the Act and the SAA.  Commerce was unable to conduct an in-person, on-site verification, and, accordingly, did not issue a verification report in

---

[30] See Public Hearing Transcript dated November 16, 2020 (Hearing Transcript) at 13.
[31] See Torrington Co. v. U.S., 68 F.3d 1347, 1351 (Fed. Cir. 1995) ("In light of Commerce's construction of the statute, the verification issue turns on whether Commerce abused its discretion… that is, whether Commerce's decision was 'based on a consideration of the relevant factors and whether there has been a clear error of judgment.'") (citing Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)).
[32] See Petitioner's Post-Prelim Comments at 23-25; see also Questionnaire in Lieu of Verification.
[33] See Petitioner's Letter, "Forged Steel Fluid End Blocks from India: Case Brief of Petitioner," dated October 19, 2020 at 6; see also Hearing Transcript at 13.
[34] See Final Determination IDM at 4-5.

accordance with 19 CFR 351.307(b)-(d).  Consequently, Commerce issued its "Questionnaire in Lieu of Verification," and subsequentially issued a Final Sales Analysis Memorandum and Final Cost Calculation Memorandum, which summarized the findings from Bharat's response to the "Questionnaire in Lieu of Verification."[35]  This was Commerce's procedure for verification during this investigation, because we were unable to conduct on-site verification of Bharat in India or its affiliate in the United Kingdom.

Commerce is not persuaded that it should revise its verification procedures that it applied to this investigation, and we are not persuaded that we should retroactively conduct an in-person, on-site verification regarding this investigation.  During the time of this investigation, India and the United Kingdom imposed strict travel restrictions on U.S. travelers due to the Covid-19 pandemic, regardless of vaccination status.  Thus, an in-person verification in accordance with 19 CFR 351.307 (b)-(d) was unfeasible.  Regarding the petitioner's arguments that Commerce failed to issue a verification report, although the SAA, and the regulations, require Commerce to "report the methods, procedures, and results of a verification,"[36] the record of the investigation shows Commerce met this obligation.  As discussed above, the verification questionnaires and responses, the Final Sales Analysis Memorandum and the Final Cost Calculation Memorandum, the *Final Determination* IDM, and these final results of redetermination all explain the methods, procedures, and results of the off-site verification that Commerce conducted.[37]  Thus, the

---

[35] *See* Memoranda, "Cost of Production and Constructed Value Calculation Adjustments for the Final Determination – Bharat Forge Limited," dated December 7, 2020 (Final Cost Calculation Memorandum); and "Forged Steel Fluid End Blocks from India – Final Determination Analysis Memorandum for Bharat Forge Limited," dated December 7, 2020 (Final Sales Analysis Memorandum); *see also* Bharat's Letter, "Forged Steel Fluid End Blocks from India: Submission of Bharat Forge Limited's Post-Preliminary Response," dated September 14, 2020 (Bharat's Questionnaire in Lieu of Verification Response).
[36] *See* SAA at 868; *see also* 19 C.F.R. § 351.307(c).
[37] *See* Questionnaire in Lieu of Verification; *see also* Bharat's Questionnaire in Lieu of Verification Response; Final Sales Analysis Memorandum; Final Cost Calculation Memorandum; and *Final Determination* IDM at 5, 8, 9, 11.

verification procedures Commerce used during the investigation satisfied its statutory requirements under section 782(i) of the Act.

Commerce's verification procedures are not dictated or influenced by foreign governments or other U.S. government agencies. As discussed above, the courts have stated that "Congress has implicitly delegated to Commerce the latitude to derive verification procedures *ad hoc*," and that "the statute gives Commerce wide latitude in its verification procedures."[38] Additionally, the verification procedures utilized for this investigation were consistent with the CIT's opinions regarding Commerce's verification practice: "Verification is a spot check and is not intended to be an exhaustive examination of the respondent's business."[39] The "Questionnaire in Lieu of Verification" probed information already submitted by Bharat and the questions were a spot check regarding specific sales and cost issues identified by Commerce and the petitioner. Therefore, Commerce's verification procedures in response the Covid-19 pandemic were appropriate and within its statutory authority.

## V.   FINAL RESULTS OF REDETERMINATION

As a result of this *Remand Order*, we determine that Commerce's use of a questionnaire in lieu of an in-person, on-site verification and Commerce's subsequent analysis of the

---

[38] *See Micron Tech. v. United States*, 117 F.3d 1386, 1396 (Fed. Cir. 1997); *see also American Alloys, Inc. v. United States*, 30 F.3d 1469, 1475 (Fed. Cir. 1994); *Goodluck India Limited v. United States*, 11 F.4th 1335, 1344 (Fed. Cir. 2021) ("Commerce enjoys 'broad discretion' to promulgate and enforce its procedural rules"); *Stupp Corp. v. United States*, 5 F.4th 1341, 1350–51 (Fed. Cir. 2021) ("Short of a showing that Commerce's enforcement of its procedural rules is so haphazard or unreasonable as to be arbitrary or capricious{,} ... Commerce's failure to apply those rules with Procrustean consistency in every case does not deprive it of the authority to enforce those rules in any case").
[39] *See Monsanto Co. v. United States*, 937, 698 F. Supp. 2d 275, 281 (CIT 1988).

information collected with that questionnaire reasonably satisfied the verification requirement

under 782(i) of the Act.

X

Signed by: RYAN MAJERUS

_____
Ryan Majerus
Deputy Assistant Secretary
 for Policy and Negotiations