IN THE UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:      THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| ELLWOOD CITY FORGE COMPANY, )<br>ELLWOOD NATIONAL STEEL COMPANY )<br>ELLWOOD QUALITY STEELS COMPANY, )<br>and A. FINKL & SONS, )<br> )<br> Plaintiffs, )<br> )<br> v. )<br> )<br>UNITED STATES, )<br> )<br> Defendant, )<br> )<br> and )<br> )<br>BHARAT FORGE LIMITED, )<br> )<br> Defendant-Intervenor. )<br> ) | Court No. 21-00007 |

**DEFENDANT'S RESPONSE IN OPPOSITION TO PLAINTIFFS'
REVISED BRIEF IN SUPPORT OF THEIR RULE 56.2 MOTION
FOR JUDGMENT ON THE AGENCY RECORD**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. McCARTHY
Director

OF COUNSEL:
W. MITCH PURDY
Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
   Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (240) 482-5214
Email: William.purdy@trade.gov
.

SARAH E. KRAMER
Trial Attorney
Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington, D.C. 20044
Tel.: (202) 353-0537
Fax: (202) 353-2062

May 10, 2022

Attorneys for Defendant

**TABLE OF CONTENTS**

STATEMENT PURSUANT TO RULE 56.2 ...................................................................... 2

    I.     Administrative Determination Under Review .......................................... 2

    II.    Statement Of The Issues ........................................................................... 2

STATEMENT OF FACTS ............................................................................................... 2

SUMMARY OF ARGUMENT ....................................................................................... 5

ARGUMENT ................................................................................................................... 6

    I.     Legal Standards ........................................................................................ 6

    II.    Commerce's Reliance On The Verification Questionnaire Is In
            Accordance With Law And Supported By Substantial Evidence ........................... 8

    III.   The Remand Redetermination Complies With The Court's
            Remand Order ........................................................................................ 23

    IV.   Commerce's Finding That Bharat Accurately Reported Its G&A
            Expenses Was Reasonable And Supported By Substantial Evidence ................. 26

    V.    Commerce's Finding That Bharat Accurately Reported Its Costs Is
            Supported By Substantial Evidence ....................................................... 28

CONCLUSION ............................................................................................................. 31

## TABLE OF AUTHORITIES

### CASES

*ABB, Inc. v. United States*,
273 F. Supp. 3d 1186 (Ct. Int'l Trade 2017) ............................................. 23

*AlTech Specialty Steel Corp. v. United States*,
745 F.2d 632 (Fed, Cir. 1984) ......................................................... 13

*Altx, Inc. v. United States*,
370 F.3d 1108 (Fed. Cir. 2004) ......................................................... 8

*Am. Alloys Inc. v. United States*,
30 F.3d 1496 (Fed. Cir. 1994) ....................................................... 9, 19

*Burlington Truck Lines, Inc. v. United States*,
371 U.S. 156 (1962) ................................................................. 7

*Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*,
467 U.S. 837 (1984) ........................................................... 6, 7, 13

*Consol. Edison Co. of N.Y. v. NLRB*,
305 U.S. 197 (1938) ................................................................. 8

*Consol. Fibers, Inc. v. United States*,
535 F. Supp. 2d 1345 (Ct. Int'l Trade 2008) .............................................. 8

*Consolo v. Fed. Mar. Comm'n*,
383 U.S. 607 (1966) .............................................................. 8, 25

*CS Wind Vietnam Co. v. United States*,
832 F.3d 1367 (Fed. Cir. 2016) ......................................................... 7

*Dongtai Peak Honey Indus. v. United States*,
777 F.3d 1343 (Fed. Cir. 2015) ......................................................... 7

*Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*,
25 C.I.T. 1150 (2001) .............................................................. 9, 19

*Fujian Mach. & Equip. Imp. & Exp. Corp. v. United States*,
276 F. Supp. 2d 1371 (Ct. Int'l Trade 2003) ............................................. 17

*Fujitsu Gen. Ltd. v. United States*,
88 F.3d 1034 (Fed. Cir. 1996) ....................................................... 6, 7

*Goodluck India Ltd., v. United States*,
    11 F.4th 1335 (Fed. Cir. 2021) ................................................................... 9, 19

*Hercules, Inc. v. United States*,
    11 C.I.T. 710, 673 F. Supp. 454 (1987) ................................................... 10, 13

*Hyundai Steel Co. v. United States*,
    No. 20-03799, 2021 WL 3828895 (Ct. Int'l Trade Aug. 27, 2021) ............... 23

*Industrial Quimica Del Nalon, S.A. v. United States*,
    729 F. Supp. 103 (Ct. Int'l Trade 1989) ...................................................... 13

*JBF RAK LLC v. United States*,
    790 F.3d 1358 (Fed. Cir. 2015) ................................................................ 7, 13

*Koyo Seiko Co., Ltd. v. United States*,
    36 F.3d 1565 (Fed. Cir. 1994) ............................................................. 6, 10, 12

*Kyocera Solar, Inc. v. United States Int'l Trade Comm'n*,
    844 F.3d 1334 (Fed. Cir. 2016) ................................................................. 6, 10

*Maverick Tube Corp. v. United States*,
    857 F.3d 1353 (Fed. Cir. 2017) ...................................................................... 8

*Micron Tech., Inc. v. United States*,
    117 F.3d 1386 (Fed. Cir. 1997) ......................................................... 9, 17, 19

*Monsanto Co. v. United States*,
    698 F. Supp. 2d 275 (CIT 1988) ................................................................. 12

*Motor Vehicle Mfrs. Ass'n of U.S. v. State Farm Mut. Auto. Ins. Co.*,
    463 U.S. 29 (1983) ......................................................................................... 7

*Myland Indus., Ltd. v. United States*,
    31 C.I.T. 1696 (2007) .................................................................................. 10

*Nippon Steel Corp. v. United States*,
    458 F. 3d 1345 (Fed. Cir. 2006) .................................................................... 8

*PAM S.p.A. v. United States*,
    463 F.3d 1345 (Fed. Cir. 2006) ................................................................... 23

*Paul Muller Industrie GmbH & Co. v. United States*,
    502 F. Supp. 2d 1271 (Ct. Int'l Trade 2007) ............................................... 20

*Penntech Papers, Inc. v. NLRB,*
    706 F.2d 18 (1st Cir. 1983) ............................................................................ 13

*PSC VSMPO–Avisma Corp. v. United States,*
    688 F.3d 751 (Fed. Cir. 2012) ........................................................................... 7

*Rhone Poulenc, Inc. v. United States,*
    899 F.2d 1185 (Fed. Cir. 1990) ....................................................................... 20

*SKF USA Inc. v. United States,*
    254 F.3d 1022 (Fed. Cir. 2001) ....................................................................... 23

*Stanley Works (Langfang) Fastening Sys. Co., Ltd. v. United States,*
    279 F. Supp. 3d 1172 (Ct. Int'l Trade 2017) ..................................................... 7

*Timex V.I., Inc. v. United States,*
    157 F.3d 879 (Fed. Cir. 1998) ........................................................................... 6

*Timken Co. v. United States,*
    852 F. Supp. 1122 (Ct. Int'l Trade 1994) ........................................................ 14

*Torrington Co. v. United States,*
    68 F.3d 1347 (Fed. Cir. 1995) ................................................................... 11, 25

*Torrington Co. v. United States,*
    82 F.3d 1039 (Fed. Cir. 1996) ............................................................. 6, 10, 13

*U.S. Steel Grp. A Unit of USX Corp. v. United States,*
    973 F. Supp. 1076 (Ct. Int'l Trade 1997) ........................................................ 10

*U.S. Steel Grp. v. United States,*
    96 F.3d 1352 (Fed. Cir. 1996) ..................................................................... 7, 13

*Universal Camera Corp. v. NLRB,*
    340 U.S. 474 (1951) ........................................................................................ 25

*Viet I–Mei Frozen Foods Co. v. United States,*
    839 F.3d 1099 (Fed. Cir. 2016) ................................................................... 8, 25

## STATUTES

19 U.S.C. § 1516a(b)(1)(B) ...................................................................................... 6

19 U.S.C. § 1677m(i) ................................................................................... *passim*

## REGULATIONS

19 C.F.R. § 351.301 .................................................................................................. 15

19 C.F.R. § 351.302 .................................................................................................. 15

19 C.F.R. § 351.307 .............................................................................................*passim*

19 C.F.R. § 351.310(c) ................................................................................................ 3

## FEDERAL REGISTER

*Brake Rotors From the People's Republic of China,*
   64 Fed. Reg. 61,581 (Dep't of Commerce Nov. 12, 1999) .......................................... 11

*Polyethylene Terephthalate Resin From Pakistan,*
   83 Fed. Reg. 48,281 (Dep't of Commerce Sep. 24, 2018) .......................................... 11

*Forged Steel Fluid End Blocks From Germany,*
   85 Fed. Reg. 80,018 (Dep't of Commerce Dec. 11, 2020) .......................................... 24

*Forged Steel Fluid End Blocks from India,*
   85 Fed. Reg. 44,517 (Dep't of Commerce July 23, 2020) ............................................ 3

*Forged Steel Fluid End Blocks From India,*
   85 Fed. Reg. 80,003 (Dep't of Commerce Dec. 11, 2020) ........................................... 2

*Forged Steel Fluid End Blocks From the Federal Republic of Germany, India, and Italy,*
   85 Fed. Reg. 2,394 (Dep't of Commerce Jan. 15, 2020) ............................................. 2

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| ELLWOOD CITY FORGE COMPANY, ) | |
| ELLWOOD NATIONAL STEEL COMPANY ) | |
| ELLWOOD QUALITY STEELS COMPANY, ) | |
| and A. FINKL & SONS, ) | |
| ) | |
| Plaintiffs, ) | |
| ) | |
| v. ) | |
| ) | |
| UNITED STATES, ) | |
| ) | Court No. 21-00007 |
| Defendant, ) | |
| ) | |
| and ) | |
| ) | |
| BHARAT FORGE LIMITED, ) | |
| ) | |
| Defendant-Intervenor. ) | |

## DEFENDANT'S RESPONSE IN OPPOSITION TO
## PLAINTIFFS' REVISED BRIEF IN SUPPORT OF THEIR RULE 56.2 MOTION FOR
## JUDGMENT ON THE AGENCY RECORD

Defendant, the United States, respectfully submits this response in opposition to the

Revised Brief In Support of Plaintiffs Rule 56.2 Motion For Judgment On The Agency Record

filed by the plaintiffs, Ellwood City Forge Company, Ellwood National Steel Company, Ellwood

Quality Steels Company, and A. Finkl & Sons (collectively, Ellwood), challenging certain

aspects of the Department of Commerce's final determination and final remand redetermination

in the antidumping duty investigation of forged steel fluid end blocks from India.  Revised Brief

of Plaintiffs In Support Of Their Rule 56.2 Motion For Judgment On The Agency Record

(Ellwood Br.), March 11, 2022, ECF Nos. 33, 34.  As we demonstrate below, Commerce's final

determination and final remand redetermination are supported by substantial evidence and in

accordance with the law.  Therefore, we respectfully request that the Court deny Ellwood's

motion and sustain Commerce's final determination and final remand redetermination.

**STATEMENT PURSUANT TO RULE 56.2**

**I.**      **Administrative Determination Under Review**

The administrative determination under review is the final determination in the

antidumping duty investigation of fluid end blocks from India.  *See Forged Steel Fluid End*

*Blocks From India*, 85 Fed. Reg. 80,003 (Dep't of Commerce Dec. 11, 2020) (final neg.

antidumping determin.) (Final Determination) (P.R. 279), Appx083628-083630, and

accompanying Issues and Decision Memorandum (IDM) (P.R. 269), Appx083612-083627.  The

period of investigation is October 1, 2018 through September 30, 2019.  IDM at Appx083612.

**II.**      **Statement Of The Issues**

**1.**      Whether Commerce's verification conducted pursuant to 19 U.S.C. § 1677m(i) was

in accordance with law and supported by substantial evidence.

**2.**      Whether Commerce's remand redetermination complies with the Court's Remand

Order.

**3.**      Whether Commerce's finding that Bharat accurately reported its General &

Administrative (G&A) expenses was supported by substantial evidence.

**4.**      Whether Commerce's finding that Bharat accurately reported its costs was

supported by substantial evidence.

**STATEMENT OF FACTS**

On January 15, 2020, Commerce published its initiation of the antidumping duty

investigation of forged steel fluid end blocks from India.  *See Forged Steel Fluid End Blocks*

*From the Federal Republic of Germany, India, and Italy*, 85 Fed. Reg. 2,394 (Dep't of

2

Commerce Jan. 15, 2020) (initiation notice), (P.R. 24) Appx080000-080005.  In the initiation

notice, Commerce notified the public that it intended to examine all known producers and

exporters of fluid end blocks (*i.e.*, Bharat and Ultra Engineers (Ultra)), as identified in the

petition by petitioners.  *Id.*  From March through July 2020, Commerce issued supplemental

questionnaires to Bharat and received timely responses.  *See Forged Steel Fluid End Blocks*

*from India*, 85 Fed. Reg. 44,517 (Dep't of Commerce July 23, 2020) (negative preliminary

determination) (P.R. 227), Appx083300-083302, and accompanying Preliminary Decision

Memorandum (PDM) at 3 (P.R. 214), Appx083289 (citing questionnaires issued between

March and July and the timely responses received from Bharat).

On March 23, 2020, Commerce requested interested parties to submit constructed value

(CV) profit and selling expense comments and information.  PDM at Appx083290.  On April

20, 2020, petitioners, Bharat, and Ultra submitted comments and new factual information

regarding CV profit and selling expenses for consideration in the calculation of CV as the basis

for normal value in this investigation.  *Id.*  On May 11, 2020, petitioners, Bharat and Ultra

submitted rebuttal comments and factual information that rebuts, clarifies, or corrects

information concerning the submitted CV profit and selling expenses.  *Id.*

Commerce published the negative preliminary determination on July 23, 2020, and

determined that Ultra had no in-scope sales to the United States during the period of

investigation.  *See id.* at Appx083291.  On August 5, 2020, petitioners submitted post-

preliminary determination comments.  IDM at Appx083612-083613.  On September 2, 2020,

Bharat submitted a reply to petitioners' post-preliminary determination comments.  *Id.* at

Appx083613.  On August 24, 2020, pursuant to 19 C.F.R. § 351.310(c), petitioners requested

that Commerce hold a public hearing.  *Id.*

As relevant here, on September 2, 2020, Commerce issued a questionnaire requesting additional information in lieu of performing on-site verification in accordance with 19 U.S.C. § 1677m(i).  *Id.*  On September 14, 2020, Bharat filed a timely response to the in lieu of on-site verification questionnaire.  *Id.*  On October 2, 2020, Commerce invited parties to comment on the preliminary determination and Bharat's response to the in lieu of on-site verification questionnaire.  *Id.*  In October 2020, Commerce received case briefs and rebuttal briefs from petitioners and Bharat.  *Id.*  On December 11, 2020, Commerce published the final negative determination in the antidumping duty investigation of forged steel fluid end blocks from India. *See generally* Final Determination at Appx083628-083630.  In the final negative determination, Commerce stated that because it was unable to conduct on-site verification of the information on which it had relied in making its final determination, it had requested additional supporting documentation and information in lieu of on-site verification and relied on the information submitted on the record as facts available.  IDM at Appx083613.

On October 18, 2021, we requested a voluntary remand for Commerce to reconsider its position in this investigation on the in lieu of on-site verification questionnaire and subsequent reliance on facts available in its final determination.  Def.'s Mot. for Vol. Remand (Def.'s Mot.) at 5-6, ECF No. 24.  On October 29, 2021, the Court granted our request for a voluntary remand. Commerce filed the remand results on January 12, 2022, 75 days before the Court's deadline established in its October 29, 2021 Order.  Final Results of Redetermination Pursuant To Court Remand, ECF No. 29 (Remand Redetermination).  In the remand redetermination, Commerce rescinded its previous statement that the verification questionnaire had not satisfied Commerce's verification obligations under 19 U.S.C. § 1677m(i) and continued to find that fluid end blocks

from India were not being sold at less-than-fair-value.  *See generally id.*

## SUMMARY OF ARGUMENT

Commerce's final determination and remand redetermination are supported by substantial evidence and in accordance with law, and Ellwood's arguments do not demonstrate otherwise. As an initial matter, during the investigation, Ellwood agreed with Commerce's verification methodology and did not challenge the use of the verification questionnaire until litigation. Thus, the arguments Ellwood makes now contradict the position it took regarding Commerce's verification methodology in the underlying proceeding.  Regardless, Commerce verified the information on which it relied in making its final determination using a verification questionnaire, in a manner consistent with the statute and with Commerce's past adaptation of its procedures during crises.  Commerce relied on verifiable data and information provided by the respondent throughout the investigation.  Moreover, Commerce reasonably explained the record basis for relying on the provided information and how that record information supported its determination, and Ellwood's arguments regarding Commerce's reliance on Bharat's response to Commerce's verification questionnaire do not undermine Commerce's determination.

Second, Commerce's finding that Bharat had accurately reported its G&A expenses should be sustained.  The G&A costs at issue in Ellwood's brief are the period of investigation salaries and benefits costs, which Commerce used to compare a period of investigation ratio that was applied to the company's fiscal year company-wide salary and benefits expenses as reflected in their audited financial statements to determine the fiscal year amount attributable to G&A. Because the period of investigation salaries and benefits expenses used in the ratio were based on the actual salaries and benefits for specific employees working in specific cost centers, it would not be appropriate to incorporate Ellwood's suggested additional adjustments to G&A expenses.

Finally, Commerce's finding that Bharat had accurately reported its costs should be sustained. As Commerce explained in the final determination, Bharat cooperated fully in responding to Commerce's verification questionnaire, and accurately included the costs challenged by Ellwood in the calculation of its reported costs.

## ARGUMENT

**I.      Legal Standards**

In reviewing Commerce's antidumping or countervailing duty determinations, "the Court of International Trade must sustain 'any determination, finding or conclusion' found by Commerce unless it is 'unsupported by substantial evidence on the record, or otherwise not in accordance with law.'" *Fujitsu Gen. Ltd. v. United States*, 88 F.3d 1034, 1038 (Fed. Cir. 1996) (quoting 19 U.S.C. § 1516a(b)(1)(B)). In reviewing whether Commerce's actions are in accordance with law, the Court relies upon the two-step test articulated by the Supreme Court in *Chevron, U.S.A., Inc. v. Natural Resource Defense Council, Inc.*, 467 U.S. 837 (1984). In the first step, the Court determines "whether Congress has directly spoken to the precise question at issue" and clearly expressed its purpose and intent in the governing statute. *See id.* at 842-43. In considering whether Congress has spoken to the precise question at issue, the Court may consider the statute's structure and legislative history. *Timex V.I., Inc. v. United States*, 157 F.3d 879, 882 (Fed. Cir. 1998).

If the statute is silent or ambiguous regarding the relevant issue, the traditional second prong of the *Chevron* analysis requires courts to "defer to the agency's interpretation of its own statute as long as that interpretation is reasonable." *Koyo Seiko Co., Ltd. v. United States*, 36 F.3d 1565, 1573 (Fed. Cir. 1994); *see Kyocera Solar, Inc. v. United States Int'l Trade Comm'n*, 844 F.3d 1334 (Fed. Cir. 2016) (same); *Torrington Co. v. United States*, 82 F.3d 1039, 1044

(Fed. Cir. 1996) ("Any reasonable construction of the statute is a permissible construction."). "The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction." *Chevron*, 467 U.S. at 843 n.11. Commerce is afforded an especially great deal of deference "when a statute fails to make clear 'any Congressionally mandated procedure or methodology for assessment of the statutory test.'" *JBF RAK LLC v. United States*, 790 F.3d 1358, 1363 (Fed. Cir. 2015) (quoting *U.S. Steel Grp. v. United States*, 96 F.3d 1352, 1362 (Fed. Cir. 1996)). In that circumstance, "Commerce 'may perform its duties in the way it believes most suitable.'" *Id.* "Antidumping . . . duty determinations involve complex economic and accounting decisions of a technical nature, for which agencies possess far greater expertise than courts," *PSC VSMPO–Avisma Corp. v. United States*, 688 F.3d 751, 764 (Fed. Cir. 2012), and so courts afford Commerce significant deference in those determinations, *id.* (citation omitted); *Fujitsu Gen. Ltd.*, 88 F.3d at 1039; *see also Stanley Works (Langfang) Fastening Sys. Co., Ltd. v. United States*, 279 F. Supp. 3d 1172, 1185 (Ct. Int'l Trade 2017). Still, Commerce "must cogently explain why it has exercised its discretion in a given manner." *Motor Vehicle Mfrs. Ass'n of United States v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 48 (1983); *see also CS Wind Vietnam Co. v. United States*, 832 F.3d 1367, 1377 (Fed. Cir. 2016) ("The requirement of explanation presumes the expertise and experience of the agency and still demands an adequate explanation in the particular matter." (citing *Burlington Truck Lines, Inc. v. United States*, 371 U.S. 156, 167-68 (1962)).

Additionally, this Court reviews Commerce's conduct of its administrative proceedings for abuse of discretion. *See Dongtai Peak Honey Indus. Co. v. United States*, 777 F.3d 1343, 1350 (Fed. Cir. 2015). This Court "(1) must consider whether {Commerce's} decision was based on a consideration of relevant factors and whether there has been a clear error of

judgment, and (2) analyze whether a rational connection exists between {Commerce's} fact findings and its ultimate action." *Consol. Fibers, Inc. v. United States*, 535 F. Supp. 2d 1345, 1354 (Ct. Int'l Trade 2008).

Finally, a party challenging a determination under the substantial evidence standard "has chosen a course with a high barrier to reversal." *Nippon Steel Corp. v. United States*, 458 F. 3d 1345, 1352 (Fed. Cir. 2006) (citation omitted). Substantial evidence is "more than a mere scintilla," but "less than the weight of the evidence." *Altx, Inc. v. United States*, 370 F.3d 1108, 1116 (Fed. Cir. 2004) (citations omitted). "A finding is supported by substantial evidence if a reasonable mind might accept the evidence as sufficient to support the finding." *Maverick Tube Corp. v. United States*, 857 F.3d 1353, 1359 (Fed. Cir. 2017) (citing *Consol. Edison Co. of N.Y. v. NLRB*, 305 U.S. 197, 229 (1938)). Moreover, "{a}n agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *Viet I–Mei Frozen Foods Co. v. United States*, 839 F.3d 1099, 1106 (Fed. Cir. 2016) (citing *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)).

## II.    Commerce's Reliance On The Verification Questionnaire Is In Accordance With Law And Supported By Substantial Evidence

Ellwood fails to show how Commerce's verification procedure was contrary to law or an abuse of Commerce's discretion in light of the global pandemic. In an about-face from the position it took before the agency, Ellwood now argues that the statute and applicable regulations require Commerce to always conduct on-site verification, without any exception for extenuating circumstances "such as armed conflict, political instability, administrative resource constraints, and domestic or international health crises." Ellwood Br. at 21.

Contrary to Ellwood's assertions, Ellwood Br. at 20-22, the plain language of the statute does not require Commerce to conduct on-site verifications despite extenuating circumstances.

In fact, 19 U.S.C. § 1677m(i) does not include any *on-site* requirements:  it only requires, in

relevant part, that "{t}he administering authority shall verify all information relied upon in

making— (1) a final determination in an investigation, (2) a revocation under section 1675(d) of

this title, and (3) a final determination in a review under section 1675(a) of this title."

Commerce's methodology in the underlying proceeding, on which it continued to rely in the

remand redetermination, was consistent with 19 U.S.C. § 1677m(i)'s requirement that "{t}he

administering authority shall verify all information relied upon in making — (1) a final

determination in an investigation."  Commerce's regulations similarly do not require Commerce

to perform only on-site verifications.  19 C.F.R. § 351.307.[1]  The statute gives Commerce wide

latitude in its verification procedures; therefore, Congress has implicitly delegated to Commerce

the latitude to derive verification procedures *ad hoc*.  *Goodluck India Ltd., v. United States*, 11

F.4th 1335, 1342-43 (Fed. Cir. 2021); *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1396

(Fed. Cir. 1997); *Am. Alloys Inc. v. United States*, 30 F.3d 1496, 1475 (Fed. Cir. 1994); *Fujian*

*Mach. & Equip. Imp. & Exp. Corp. v. United States*, 25 C.I.T. 1150, 1157 (2001).

Commerce's use of a detailed questionnaire, in light of the exigencies and restrictions

caused by the global COVID-19 pandemic, complied with the statutory mandate to verify

information.  The Statement of Administrative Action (SAA), in referencing both investigations

and administrative reviews, states that "{a}s under existing practice, where practicable,

---

[1] 19 C.F.R. § 351.307, entitled "Verification of Information", provides that
  (b) In general.
(1) Subject to paragraph (b)(4) of this section, the Secretary will verify factual information upon which the Secretary relies in:
(i)  A final determination in a continuation of a previously suspended countervailing duty investigation (section 704(g) of the Act), countervailing duty investigation, continuation of a previously suspended antidumping investigation (section 705(a) of the Act), or antidumping investigation; . . .

verification will be conducted after receipt of all questionnaire responses." *See* SAA, H.R. Doc. No. 103- 316, at 868 (1994), *as reprinted in* 1994 U.S.C.C.A.N. 4040, 4197. Here, after the receipt of all questionnaire responses, Commerce conducted verification by issuing a verification questionnaire. Remand Redetermination at 3, 7; IDM at Appx083614. Furthermore, the language that Ellwood references as evidence that verification "must be on-site" in the SAA does not establish a restriction on Commerce's ability to verify through alternative means. *See* SAA, H.R. Doc. No. 103- 316, at 868 (1994). Instead, the SAA places restrictions on when Commerce will "verify information in a foreign country." *Id.* A set of restrictions on Commerce's ability to verify information in a foreign country, or in other words restrictions on how Commerce conducts on-site verification, is by no means a mandate that Commerce may only verify information through on-site verification. As this Court has held previously, "{t}he statute does not specify how verification is to be accomplished."[2] *U.S. Steel Grp. A Unit of USX Corp. v. United States*, 973 F. Supp. 1076, 1087 (Ct. Int'l Trade 1997).

Because the statute and the SAA do not speak directly to Commerce's ability to conduct verification by means other than on-site verification, *Chevron's* step two analysis controls. *Koyo Seiko*, 36 F.3d at 1573; *see Kyocera Solar*, 844 F.3d 1334; *Torrington Co.*, 82 F.3d at 1044.

The decision to select a particular method of verification rests solely within the agency's sound discretion. *Hercules, Inc. v. United States*, 11 C.I.T. 710, 726, 673 F. Supp. 454, 469 (1987). If a reasonable standard is applied and the verification is supported by substantial evidence, the court will sustain the methodology. *Id.* Alternatives to on-site

---

[2] To the extent that Ellwood relies on *Myland*'s single phrase saying that verification is conducted "on-site," that phrase is dicta; in that case, "verification was neither requested nor conducted." *Myland Indus., Ltd. v. United States*, 31 C.I.T. 1696, 1702 (2007).

verification by Commerce have been recognized as a lawful "compromise" when on-site verification requested during an administrative review was not conducted, in part, because of the outbreak of the Persian Gulf War and the attendant risk to international travel. *Torrington Co. v. United States*, 68 F.3d 1347, 1352 (Fed. Cir. 1995). Notably, Ellwood recognizes instances where Commerce was unable to conduct on-site verification and as such adopted procedures in lieu of an on-site verification in both investigations and administrative reviews. *See* Ellwood Br. at 26-27 (citing *Polyethylene Terephthalate Resin From Pakistan*, 83 Fed. Reg. 48,281 (Dep't of Commerce Sep. 24, 2018) (explaining that as provided in section {§1677m(i)} verification was conducted in Washington D.C. when travel in Pakistan was not possible); *Brake Rotors From the People's Republic of China*, 64 Fed. Reg. 61,581, 61,587 (Dep't of Commerce Nov. 12, 1999) (conducting off-site verification at a hotel due to security concerns at production facilities and further explaining that Commerce has the discretion to elect to verify off-site)).

Ellwood claims to "take no position as to whether the procedures described in these examples would constitute 'on-site' verification," but it is clear from even a cursory review of these cases that the alternative verification methodologies used by Commerce are not on-site verification, they are alternatives to on-site verification because they did not take place on-site at the respondent's facilities. *See Polyethylene Terephthalate Resin From Pakistan*; *Brake Rotors From the People's Republic of China*. Thus, similar to prior situations where Commerce was unable to perform on-site verification, Commerce exercised the broad discretion delegated by Congress to perform verification through the use of a verification questionnaire in light of a global pandemic. Moreover, plaintiffs themselves suggest an alternative to on-site verification, videoconferencing, as an example of an alternative method

11

for conducting verification.  *See* Ellwood Br. at 31[3]; *see also* Pls. Br. in Support of Their Rule

56.2 Mot. for J. on the Agency Record at 25-26, 30, July 20, 2021, ECF No. 23 (suggesting

videoconferencing as a viable alternative to on-site verification).

Thus, Commerce's use of a verification questionnaire was a reasonable exercise of its

discretion, under the statute, to conduct verification in light of the restrictions imposed due to

COVID-19.  *See, e.g.*, Remand Redetermination at 7, 9.  Moreover, Commerce explained how

the verification questionnaire achieved the aims of verification:

> the verification procedures utilized for this investigation were
> consistent with the CIT's opinions regarding Commerce's
> verification practice: "Verification is a spot check and is not
> intended to be an exhaustive examination of the respondent's
> business."  The "Questionnaire in Lieu of Verification" probed
> information already submitted by Bharat and the questions were a
> spot check regarding specific sales and cost issues identified by
> Commerce and the petitioner. Therefore, Commerce's verification
> procedures in response the Covid-19 pandemic were appropriate
> and within its statutory authority.

Remand Redetermination at 10 (quoting *Monsanto Co. v. United States*, 698 F. Supp. 275, 281

(Ct. Int'l Trade 1988)).

That Ellwood would have preferred a different method, such as videoconferencing, does

not render Commerce's exercise of its discretion unreasonable or contrary to law.  *See Koyo*

---

[3]  Plaintiffs make much of Bharat's October 7, 2020 letter to Commerce noting its availability for further verification proceedings, should Commerce deem them necessary.  *See* Ellwood Br. at 12, 31.  However, Bharat did not affirmatively request verification via videoconferencing; Bharat merely informed Commerce that, should Commerce have further questions, it would be available to answer them through teleconferencing.  Bharat Letter to Commerce at 2, (Oct. 7, 2020) (P.R. 254) Appx087617 ("Our purpose in writing is to communicate Bharat Forge's willingness to make itself available for a teleconference with Department officials should questions or doubts remain with regard to the 'verification' materials submitted on September 10 . . . . {S}hould Department officials have questions concerning the materials submitted on September 10, 2020, Bharat Forge would welcome the opportunity to respond to such questions via teleconference.").  As discussed below, Commerce understood Bharat's materials and was able to verify based on the verification questionnaire responses alone.

*Seiko*, 36 F.3d at 1573 (holding that if the statute is silent or ambiguous regarding the relevant issue, the traditional second prong of the *Chevron* analysis requires courts to "defer to the agency's interpretation of its own statute as long as that interpretation is reasonable."); *Torrington Co.*, 82 F.3d at 1044 ("Any reasonable construction of the statute is a permissible construction."); *Chevron*, 467 U.S. at 843 n.11 ("The court need not conclude that the agency construction was the only one it permissibly could have adopted to uphold the construction."); *JBF RAK*, 790 F.3d at 1363 ("{W}hen a statute fails to make clear 'any Congressionally mandated procedure or methodology for assessment of the statutory test,'" then "Commerce 'may perform its duties in the way it believes most suitable.'") (quoting *U.S. Steel Grp.*, 96 F.3d at 1362); *Hercules*, 673 F. Supp. at 469 ("Thus, while Hercules proposes the Court choose an alternative method for verification, "{this C}ourt may not substitute its judgment for that of {Commerce} when the choice is 'between two fairly conflicting views, even though the court would justifiably have made a different choice had the matter been before it *de novo*.'") (alterations original) (quoting *Penntech Papers, Inc. v. NLRB*, 706 F.2d 18, 22 (1st Cir. 1983), *cert. denied*, 464 U.S. 892 (1983)).

Furthermore, in all of the cases Ellwood cites as examples of when the Court has remanded Commerce for failing to "conduct verification," Commerce took *no* steps to verify during an administrative review.  *See Industrial Quimica Del Nalon, S.A. v. United States*, 729 F. Supp. 103, 108 (Ct. Int'l Trade 1989) (where this Court remanded to Commerce for failing to verify in an administrative review when verification was requested by domestic industry); *AlTech Specialty Steel Corp. v. United States*, 745 F.2d 632, 632-634 (Fed. Cir. 1984) (where the Federal Circuit reversed and remanded an underlying decision from this Court sustaining a refusal to verify by Commerce on the basis that Commerce was not required to verify in

administrative reviews); *Timken Co. v. United States*, 852 F. Supp. 1122, 1130-31 (Ct. Int'l

Trade 1994) (holding Commerce's decision to decline to verify respondent's questionnaire

response in an administrative review was permissible).  None of these cases are relevant to the

case at hand, where Commerce, in an investigation, issued a verification questionnaire to verify

Bharat's questionnaire responses at a time when on-site verification was not possible.

Although Ellwood correctly states that Commerce acknowledged that it did not conduct

an on-site verification, Commerce did conduct verification using a questionnaire.  *See* Remand

Redetermination at 3.  On September 2, 2020, Commerce issued a questionnaire requesting

additional information from Bharat explicitly in lieu of performing on-site verification.

Remand Redetermination at 3, 7.  A plain reading of this questionnaire, and how Commerce

ultimately used Bharat's responses, indicates that Commerce used the questionnaire for

verification purposes:

> We are issuing this questionnaire in lieu of performing an on-site
> verification. The purpose of this questionnaire is to probe
> information that you have already submitted – not to obtain new
> information. Accordingly, the questions are similar to those that
> the Department of Commerce (Commerce) would normally ask
> during an on-site verification.

Bharat Verification Questionnaire at Appx083332.  Commerce further explained that

"{n}ormally, after an on-site verification, parties do not have an opportunity to submit factual

information rebutting information collected by Commerce at verification.  Accordingly,

Commerce will not accept factual information from other interested parties to rebut your

questionnaire responses."  *Id.* at Appx083333 (discussing how, under Commerce's regulations,

unsolicited new factual information cannot be submitted during verification and how

"responses indicating that information previously submitted cannot be verified – may result in

the application of partial or total facts available").  Commerce intended to, and did, conduct

14

verification through the verification questionnaire, and hewed as closely to its on-site

verification procedures as feasible given the circumstances.

The record facts indicate that Commerce treated the verification questionnaire as

verification.  The responses from Bharat to Commerce's verification questionnaire, *see generally*

Bharat Response to Verification Questionnaire, (Sep. 14, 2020) (P.R. 247) (C.R. 127)

Appx087362-087446, support Commerce's use of the verification questionnaire to obtain the

type of information it would during an on-site verification.  Similar to the information that would

be collected during an on-site verification, Commerce relied on the verification questionnaire to

"probe information . . . already submitted – not to obtain new information."  Remand at 8-9.  As

stated in the verification questionnaire, and consistent with the instructions that Commerce gives

to parties as a part of an on-site verification, Commerce informed Bharat that "{u}nsolicited new

factual information (i.e., information beyond that which we are requesting), or revisions of

previously requested information, *may* be rejected, pursuant to 19 CFR 351.301 and 351.302."

Bharat Verification Questionnaire at Appx083332 (emphasis added).  To verify record

information, it was necessary for Commerce to collect and review supporting documentation to

substantiate Bharat's claims regarding the various issues that Commerce had probed through the

verification questionnaire.  Bharat provided extensive responses to Commerce's verification

questionnaire.  *See generally* Bharat Response to Verification Questionnaire at Appx087362-

087446.

Ellwood claims that it argued in the underlying proceeding "in no uncertain terms" that

"'a robust on-site verification' is what is 'contemplated under the statute.'"  Ellwood Br. at 25.

To the contrary, the full context of Ellwood's quote sheds further light on Ellwood's consistent

treatment before Commerce of the verification questionnaire as sufficient for the purposes of

verification:

> Commerce should ask Bharat pointed questions designed to impeach the responses already provided on the record. A decision to do otherwise would only invite further abuse of process by Bharat, particularly when it knows that COVID-19 will likely prevent Commerce from holding it accountable through a robust on-site verification, as contemplated under the statute.

Petitioners Comments Following Preliminary Determination at Appx083328; *see also id*. at Appx083325-Appx083327 (suggesting questions Commerce should ask "in the event that Commerce conducts verification or *issues a verification outline for prompt response from the respondents*") (emphasis added).  As is apparent from the full quote, taken in context, Ellwood raised no issues with Commerce's verification questionnaire in its post-preliminary comments, and, in fact, did propose that Commerce ask Bharat pointed questions as a means of verifying Bharat's information*. Id.* at Appx083328; *see also id.* at Appx083325-Appx083327. Additionally, Ellwood argues that it called into question Commerce's verification process by referring to it as a "pared down verification questionnaire" in opposing the second extension requested by Bharat.  *See* Petitioners' Opposition to Second Extension at Appx087606-Appx087607.  Even in its supposed criticism of the questionnaire, it still referred to Commerce's verification questionnaire as a "verification questionnaire," and nowhere in its Opposition to Second Extension submission did Ellwood argue that Commerce had failed to satisfy its verification obligations.  *Id.*  Rather, Ellwood appeared to be expressing discontent regarding the fact that Commerce did not include *all* of the questions they argued Commerce should ask in the verification questionnaire.  *Id.*; *see generally* Petitioners Comments Following Preliminary Determination at Appx083303-083331.  Commerce, in determining which portions of Bharat's data should be probed through the verification questionnaire, was under no obligation to ask all of the questions proposed by Ellwood.  *See Fujian Mach. &*

*Equip. Imp. & Exp. Corp. v. United States*, 276 F. Supp. 2d 1371, 1376-77 (Ct. Int'l Trade 2003) (citing *Micron Tech., Inc. v. United States*, 117 F.3d 1386, 1395 (Fed. Cir. 1997)) (internal citations omitted) ("{T}ime and resources are finite, and Commerce's proven methodology is to survey only a portion of a respondent's data.  The choice of which data to sample, however, always rests with Commerce.").

Thus, in references to the verification questionnaire made by Ellwood in its submissions in the underlying proceeding, Ellwood demonstrated that it understood the circumstances surrounding the underlying investigation and Commerce's subsequent need to verify beyond Commerce's typical on-site verification.  *See* Petitioners' Case Brief at Appx083423-083536; Public Hearing Transcript at Appx083548-Appx083566.  Prior to Commerce's statement in the final determination that it had been unable to conduct verification, which Commerce revised and rescinded as a part of the voluntary remand process, Ellwood treated the verification questionnaire as verification, argued that Bharat should have "failed verification" as a result of its responses to the verification questionnaire, and *thanked* Commerce for conducting "in effect{,} a virtual verification."  *See, e.g.,* Public Hearing Transcript at Appx083548 ("{W}hile a live verification couldn't be possible, thankfully, you have issued verification questionnaires to Bharat Forge, and conducted what is in effect a virtual verification"); Case Brief at Appx083423-083528 (repeatedly referring to Commerce's in lieu of on-site verification questionnaire as verification and arguing that Bharat subsequently "failed verification").

Ellwood's argument that Commerce's questionnaire could not have counted as verification because Commerce accepted "new information" on the record as a result of that questionnaire ignores the fact that Commerce must, by the very nature of verification, review

information to confirm the veracity of facts on the record.  Contrary to Ellwood's claims, and as

discussed further below, the information Commerce collected through the verification

questionnaire directly related to information already contained on the record, and did not

constitute new factual information.  *See* IDM at Appx083616-083617, Appx083623,

Appx083625-083626.

Furthermore, there is no basis for Ellwood's belief that it should have received an

opportunity to file factual information to rebut the information gathered through Commerce's

verification questionnaire. *See, e.g.,* Ellwood Br. at 30.  As Commerce stated in the verification

questionnaire,

> {n}ormally, after an on-site verification, parties do not have an
> opportunity to submit factual information rebutting information
> collected by Commerce at verification. Accordingly, Commerce
> will not accept factual information from other interested parties to
> rebut your questionnaire responses. Interested parties should
> address the information submitted in response to this request, in
> case and rebuttal briefs.

Bharat Verification Questionnaire at Appx083333.  Thus, in conformance with how

Commerce typically conducts on-site verification, Commerce did not permit parties to submit

rebuttal factual information.  *Id.*  Instead, parties, including Ellwood, were allowed to submit

arguments addressing the information obtained through the verification questionnaire in their

case briefs.  Ellwood subsequently filed a case brief arguing, repeatedly, that Bharat had

"failed verification" and therefore Commerce should have applied total facts available with an

adverse inference (AFA).  *See generally* Petitioners' Case Brief at Appx083423-083536.

Ellwood cites no support – nor could they – for the claim that they should have been

"consulted" regarding the methods Commerce chose for verifying information in the

underlying proceeding.  *See* Ellwood Br. at 25.  As both this Court and the Federal Circuit

have previously held, "time and resources are finite, and Commerce's proven methodology is to survey only a portion of a respondent's data.  The choice of which data to sample, however, always rests with Commerce."  *Fujian Mach. & Equip. Imp. & Exp. Corp.*, 276 F. Supp. 2d at 1376-77 (citing *Micron Tech., Inc.*, 117 F.3d at 1395) (internal citations omitted).

The statute gives Commerce wide latitude in its verification procedures; therefore, Congress has implicitly delegated to Commerce the latitude to derive verification procedures *ad hoc.  Goodluck India Ltd.*, 11 F.4th at 1342-43; *Micron Tech., Inc.*, 117 F.3d at 1396; *Am. Alloys Inc.*, 30 F.3d at 1475; *Fujian Mach. & Equip. Imp. & Exp. Corp.*, 25 C.I.T. at 1157.  In exercising this discretion, Commerce is under no obligation to "consult" with parties.  However, Commerce provides parties with multiple opportunities to file rebuttal factual information, submit comments regarding Commerce's exercise of its discretion, and file case briefs arguing how Commerce should exercise its discretion, if relevant.  *See* Petitioners Comments Following Preliminary Determination, (August 5, 2020) (P.R. 233), Appx083303-083331; Petitioners' Opposition to Second Extension at 3-4, (Sept. 11, 2020) (P.R. 244), Appx087606-087607; Petitioners' Case Brief at Appx083423-083536; Public Hearing Transcript, (Nov. 6, 2020) (P.R. 266) Appx083537-083611.  Indeed, Ellwood even had the opportunity to suggest potential questions for the verification questionnaire, and Commerce took these suggestions into account when crafting the verification questionnaire.  *See* Petitioners Comments Following Preliminary Determination at Appx083325-Appx083327 (suggesting questions Commerce should ask "in the event that Commerce conducts verification or issues a verification outline for prompt response from the respondents"); Remand Redetermination at 3, 7 (stating that the verification questionnaire "included the petitioner's questions regarding Bharat's sales and cost information").  Ellwood also used these opportunities to express approval of the verification

questionnaire.  *See* Public Hearing Transcript at Appx083548 ("{W}hile a live verification couldn't be possible, thankfully, you have issued verification questionnaires to Bharat Forge, and conducted what is in effect a virtual verification").

　　As further evidence that Commerce treated the verification questionnaire responses the same as it would have treated information obtained through an on-site verification, Commerce applied AFA to Bharat with respect to multiple different issues in the underlying proceeding because of inconsistencies or deficiencies discovered through verification.  IDM at Appx083619-Appx083623.  With respect to product-specific net weights, Commerce applied partial AFA as a result of "Bharat's failure to keep reporting requirements in mind and the failure to provide support for the product-specific net weight, as requested in the Questionnaire in Lieu of Verification."  IDM at Appx083619-Appx083620.  Furthermore, Commerce found a discrepancy in certain mill test certificates "impugn{ed}{the mill certificates'} validity with respect to establishing that the products in question" were not within scope.  IDM at Appx083623.[4]  Thus, contrary to Ellwood's claims that Commerce merely accepted Bharat's "unverified information" at face value, Commerce applied partial AFA as a direct result of Bharat's responses to the verification questionnaire with respect to multiple issues found in the underlying final determination.  IDM at Appx083619-Appx083623.

---

[4] Ellwood attempts to raise additional claims regarding this and other issues in a footnote to its brief, but the issues raised in this footnote were not brought as claims in its complaint, and thus any arguments made by Ellwood regarding these issues are moot due to failure to state a claim.  *See* Ellwood Br. at 38 n. 8; Complaint, ECF No. 8.  *See Rhone Poulenc, Inc. v. United States*, 899 F.2d 1185, 1191 (Fed. Cir. 1990) (disagreeing with contention that courts can consider new arguments so long as the general issue was raised at the agency level); *Paul Muller Industrie GmbH & Co. v. United States,* 502 F. Supp. 2d 1271, 1275 (Ct. Int'l Trade 2007) (holding that when a party raises a general issue, but fails to incorporate a specific argument among other arguments that relate to the same issue, it fails to exhaust administrative remedies with respect to that argument).

Ellwood further argues that there "is no explanation for Commerce's lack of on-site verification during the remand period." Ellwood Br. at 29-30. However, Ellwood's contention misses the mark, because Commerce did not conduct a new verification during the remand period. *See generally* Remand Redetermination. Rather, it determined that the verification questionnaire it previously had issued constituted a proper verification exercise. *Id.* at 4 ("Commerce issued a questionnaire requesting additional information from Bharat in lieu of performing an on-site verification, but this procedure nevertheless satisfies the verification requirement under section 782(i) of the Act."). Commerce explained why, when the verification via questionnaire was conducted, it could not conduct verification on-site. *See* Remand Redetermination at 9 ("During the time of this investigation, India and the United Kingdom imposed strict travel restrictions on U.S. travelers due to the Covid-19 pandemic, regardless of vaccination status. Thus, an in-person verification in accordance with 19 CFR 351.307 (b)-(d) was unfeasible."); *see also id.* at 7 ("During the investigation, the petitioner understood the limitations of on-site verification in accordance with 19 CFR 351.307(b)-(d) due to the Covid-19 pandemic."). Thus, Commerce adequately explained its reasons for conducting verification via questionnaire.

Finally, Ellwood contends that Commerce's decision not to issue a verification report is contrary to law. Ellwood Br. at 18-28. The SAA, and the regulations, require Commerce to "report the methods, procedures, and results of a verification," *see* SAA at 868; *see also* 19 C.F.R. § 351.307(c), and the record shows that Commerce met this obligation. As discussed in the remand redetermination, the verification questionnaire and response, the issues and decision memorandum, and the final determination all explain the methods, procedures, and results of the off-site verification Commerce conducted. *See* Remand Redetermination at 8-9; *see also*

Bharat Verification Questionnaire at Appx083332-083338; Bharat's Response to Verification Questionnaire at Appx087362-087446. As recounted above, rather than argue that the reporting requirement was not satisfied, Ellwood approvingly discussed Commerce's verification methods and procedures used during the course of the investigation, and even went so far as to thank Commerce for conducting a virtual verification during the Public Hearing. Public Hearing Transcript at Appx083548.

The issuance of a verification report, should the case be remanded to Commerce on these grounds, would have no functional impact on the outcome of the underlying proceeding. Ellwood was aware of the methods, procedures, and results of verification, and a review of its administrative case brief and the Public Hearing Transcript shows that Ellwood argued at length that Commerce should apply total AFA on the basis that Bharat "failed verification" as a result of the verification questionnaire. *See generally* Petitioners' Case Brief at Appx083423-083536; *see also* Public Hearing Transcript at Appx083548-Appx083566. The verification questionnaire and responses, the Final Sales Analysis Memorandum and the Final Cost Calculation Memorandum, the *Final Determination* IDM, and the final remand redetermination all explain the methods, procedures, and results of the off-site verification that Commerce conducted. Remand Redetermination at 9. Although Ellwood argues that Commerce's use of a verification questionnaire deprived it from filing rebuttal factual information, parties are never allowed to rebut the supporting documentation submitted as a part of verification, or in response to a verification report released by Commerce after verification. *See* Bharat Verification Questionnaire at Appx083332; Remand Redetermination at 8-9. Finally, as discussed above, parties were given an opportunity to comment on the verification questionnaire and responses through their case briefs, and Ellwood availed itself of this

opportunity by arguing that the verification questionnaire responses should serve as a justification for the application of AFA.  *See generally* Petitioners' Case Brief at Appx083423-083536.  Thus, to the extent the regulation would require Commerce to issue a separate verification "report," Ellwood cannot show that it was substantially prejudiced.  *PAM S.p.A. v. United States*, 463 F.3d 1345, 1349 (Fed. Cir. 2006) (requiring a showing of "substantial prejudice" if an agency fails to comply with a regulation).

Therefore, the Court should uphold Commerce's verification of the information on which it relied in making its final determination as consistent with law and supported by substantial evidence.

**III.**    **The Remand Redetermination Complies With The Court's Remand Order**

In defendant's request for voluntary remand, Commerce sought to "reconsider its position in this investigation on the in lieu of on-site verification questionnaire and subsequent reliance on facts available in its final determination."  Def.'s Mot. for Vol. Remand (Def.'s Mot.) at 5-6, ECF No. 24.  In seeking a voluntary remand, an agency "may request a remand (without confessing error) in order to reconsider its previous position," even when no intervening event prompts such reconsideration.  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  "{A}llow{ing} agencies to cure their own mistakes rather than wasting the court's and the parties' resources" is preferable, "especially when the agency seeks to cure the very legal defects asserted by plaintiffs."  *Hyundai Steel Co. v. United States*, No. 20-03799, 2021 WL 3828895 at *2 (Ct. Int'l Trade Aug. 27, 2021) (citations and internal quotation marks omitted).  Unless the Court limits the scope of the remand, Commerce has "broad discretion to fully consider the issues remanded."  *ABB, Inc. v. United States*, 273 F. Supp. 3d 1186, 1199 n.14 (Ct. Int'l Trade 2017).

As evidenced in the final remand redetermination filed with this Court, Commerce closely adhered to the scope of our request for voluntary remand, and revised its stance on the verification questionnaire and its relation to the requirements found in Commerce's statute and regulations, as well as rescinded its application of facts otherwise available that directly resulted from Commerce's previous finding that the questionnaire did not satisfy Commerce's statutory requirement to verify.  *See generally* Remand Redetermination.  All of these revisions go directly to the heart of the issues raised by Ellwood for the first time in their complaint and Rule 56.2 brief, namely whether Commerce had complied with the verification requirements found in 19 U.S.C. § 1677m(i) and 19 C.F.R. § 351.307.

Nowhere in our motion for voluntary remand did we state that Commerce planned to conduct in-person verification on remand.  *See* Def.'s Mot. for Vol. Remand (Def.'s Mot.) at 5-6, ECF No. 24.  Furthermore, Commerce's change in characterization regarding the verification questionnaire through the remand redetermination did not change the action taken by the agency, instead Commerce reconsidered and clarified a determination that on its face was inconsistent with decisions made on the same day in other investigations of the same subject merchandise from different countries, which treated similar verification questionnaires as satisfying Commerce's statutory obligation to verify.  *See, e.g., Forged Steel Fluid End Blocks From Germany*, 85 Fed. Reg. 80,018 (Dep't of Commerce Dec. 11, 2020) (aff. antidumping determin.) and accompanying Issues and Decision Memorandum (IDM).  In revising its characterization of the verification questionnaire, Commerce confirmed that it had fulfilled its obligations under the statute and its regulations to verify in the underlying proceeding, and everything in Ellwood's submissions in the underlying proceeding indicated that it had no issues with Commerce's

verification methodologies until Commerce stated it had not met its obligations under 19 U.S.C. § 1677m(i) in the final determination.

Commerce corrected a potential inaccuracy in the remand redetermination to clarify its method of verifying record information in the underlying proceeding. Commerce should not be required to completely revise a verification that satisfies Commerce's statutory obligations, based on arguments that Ellwood did not timely challenge as being contrary to law or otherwise unsupported by substantial evidence. Ellwood also argues that Commerce must somehow "explain why alternative mechanisms of the type previously employed, or more closely approximating on-site verification, were not possible." Ellwood Br. at 30. In reviewing a determination made by Commerce, the Court examines whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Universal Camera Corp. v. NLRB*, 340 U.S. 474, 477 (1951). Further, as the Federal Circuit has held previously, "{a}n agency finding may still be supported by substantial evidence even if two inconsistent conclusions can be drawn from the evidence." *Viet I–Mei Frozen Foods Co.*, 839 F.3d at 1106 (citing *Consolo*, 383 U.S. at 620). Ellwood's argument that Commerce has some burden to explain why its verification methodology is more reasonable than alternatives ignores the established legal standard for the substantial evidence requirement. Contrary to Ellwood's argument, and as explained in the remand redetermination, Commerce has no obligation to explain why the verification questionnaire was the best available alternative to on-site verification, only that it was a reasonable alternative. Remand Redetermination at 8 (citing *Torrington Co. v. United States*, 68 F.3d 1347, 1351 (Fed. Cir. 1995)).

IV.    **Commerce's Finding That Bharat Accurately Reported Its G&A Expenses Was Reasonable And Supported By Substantial Evidence**

Ellwood argues that Commerce should not have relied on Bharat's reported G&A expenses because "Bharat understated the G&A allocation ratio by failing to include in the numerator certain cost centers that cumulate employee cost." Ellwood Br. at 44-45. First, Ellwood asserts that Commerce misunderstood the difference between the "G&A allocation ratio" and the "G&A expense ratio," and in doing so mischaracterized its arguments regarding Bharat's G&A expenses. *Id.* Ellwood asserts that Commerce's misunderstanding and "mischaracterize{ation}" of its arguments resulted in an "arbitrary and unreasonable" determination because it "failed to understand and address what Plaintiffs actually argued." Ellwood Br. at 45. Although Ellwood attempts to argue that Commerce's finding that "all of the cost centers from the cost center report may not include employee benefits" misconstrues its argument,[5] *id.* at 45 (quoting IDM at Appx083617), there are several layers to the G&A issue that should be understood.

First, the costs at issue are salary and benefits costs. IDM at Appx083617-Appx083618. The total for the company as a whole for the period of investigation, as recorded in the company's normal books and records, is recorded as a single entry. *Id.* Second, the salary and benefits attributable to G&A are actual amounts incurred for specific employees, not an allocated amount. Thus, Ellwood's argument that Commerce should have somehow incorporated actual expenses into the G&A allocation ratio mischaracterizes the nature of Bharat's salary and

---

[5] Ellwood argues that Commerce ignored that it only argued that *certain*, rather than *all*, cost centers must have included employee benefit costs. Ellwood Br. at 45. However, Commerce clearly acknowledged that Ellwood was only addressing its arguments to "certain" cost centers. *See* IDM at Appx004421 (characterizing Ellwood's argument as "Bharat underreported general and administrative (G&A) expenses by not including certain cost centers from Exhibit D-71 of the Questionnaire in Lieu of Verification response in the calculation of the employee benefits costs included in the G&A expense ratio calculation.").

benefits costs, which are *actual expenses*. *Id.* The ratio that Ellwood is disputing, which it claims to be a separate and distinct issue from what Commerce responded to in the underlying final determination, is simply the period of investigation ratio of specifically identified G&A employee salary and benefits costs to period of investigation company-wide salary and benefits cost. This ratio was then applied to the company's fiscal year company-wide salary and benefits expense as reflected on their audited financial statements to determine the fiscal year amount attributable to G&A. *See* Ellwood Br. at 44-47; IDM at Appx083617. Bharat did this calculation because Commerce requires respondents to determine the G&A rate using its annual audited financial statement period, not the period of investigation. *See* IDM at Appx083617-083618. Because the audited financial statements only reported a total figure for salary and benefits costs, the respondent used the ratio calculated for the period of investigation to determine the amount for the fiscal year that relates to G&A. *Id.*

Additionally, the time periods on which Commerce relied for the cost center report and the G&A expense ratio are different, thus there is an expected difference in costs between the cost center report and the G&A expense ratio. IDM at Appx083618. Given these differences, to evaluate Ellwood's claim that the total G&A expenses were underreported, Commerce reconciled the reported G&A expenses to Bharat's audited financial statements. *Id.*; Bharat's Final Cost Analysis Memo (Dec. 7, 2020) (P.R. 271) (C.R. 145), Appx090000-0900013. Commerce then analyzed the reasonableness of the reported fiscal year G&A expense ratio by comparing the reported G&A expense ratio to a calculated period of investigation G&A expense ratio using the cost center costs referred to by the petitioners and found that this ratio was actually lower than the G&A expense ratio that was reported by Bharat. *Id.* As a result of this

reconciliation, Commerce ultimately found that the record did not support Ellwood's claim that

Bharat understated its G&A expenses.  *Id.*

Therefore, the Court should uphold Commerce's finding that Bharat accurately reported

its G&A expenses as supported by substantial evidence.

## V.     Commerce's Finding That Bharat Accurately Reported Its Costs Is Supported By Substantial Evidence

Finally, Ellwood argues that Bharat underreported its costs and further reported an

additional 25 cost centers for the first time at verification, and thus Commerce should find that

Bharat failed verification and apply total adverse facts available.  Ellwood Br. at 36-44.  First,

regarding the "add{itional} 25 new cost centers" that Bharat allegedly reported for the first time

at verification, Commerce compared the cost center report filed as a part of Bharat's

verification questionnaire response with the cost center report previously submitted in Exhibit

D-29 of Bharat's June 11, 2020 Second Supplemental Section D Questionnaire and found that

the additional cost centers were either cost centers already included in the calculation of

reported costs or represented a more detailed breakout from main cost centers related to

merchandise not under consideration.  IDM at Appx083616-083617.  Thus, rather than

reporting additional cost centers that were not previously accounted for in its reported

processing costs, Bharat gave additional details regarding already reported costs centers (in

some instances through reporting duplicate costs centers, while in others breaking major cost

centers into subsections for a more detailed explanation of already reported information).  *Id.*

Thus, Bharat responded thoroughly to Commerce's request for information by supplying

extensive details to support its reported costs as requested by Commerce in the verification

questionnaire.  IDM at Appx083617.

Furthermore, record evidence shows that the costs Ellwood alleges were not included in

the calculation of Bharat's reported costs were, in fact, included in its calculation of reported costs. *Id.* Bharat separately identified these costs in several different line items and included them in the buildup of the reported costs at Exhibit D-32.2 and Exhibit D-32.6 of Bharat's June 11, 2020 supplemental Section D response. *Id.* Ellwood compares the total costs from the cost center report to the total cost of the Merchandise Under Consideration (MUC) from the cost reconciliation, and concludes that the costs for the MUC are underreported. Ellwood Br. at 43-44. However, this analysis is flawed because the cost center report includes costs of both merchandise under consideration and merchandise not under consideration, and thus reasonably reports greater costs than those in the cost reconciliation, which reports only the total cost of the MUC. IDM at Appx083617.

The cost center report in question (Exhibit D-71) on which most of Ellwood's arguments focus is a schedule that was prepared for Commerce's benefit and was not kept in Bharat's normal books and records. This schedule was prepared as a means of demonstrating how Bharat calculated its costs during the period of investigation at Commerce's request, as Commerce was seeking to verify Bharat's reported costs through the verification questionnaire. Exhibit D-71 thus lists cost centers and amounts, and further labels such costs centers as either relating to MUC, non-MUC, or both MUC and non-MUC. *See* Bharat Verification Questionnaire Response, Exhibit D-71 at Appx087385-087389. In the report, only admin cost centers (i.e., G&A) were signified as being related to both MUC and non-MUC. *Id.* There were no manufacturing cost centers that were signified as being related to both MUC and non-MUC. *Id.* Ellwood alleges several instances where cost center costs were not included in the originally reported costs. Ellwood Br. at 38-44. However, Bharat demonstrated how these costs were included in the calculation of the reported costs submitted to Commerce through its initial

questionnaire and supplemental questionnaire responses (including some costs relating to MUC and some of the costs relating to non-MUC).  For example, Bharat demonstrated in Exhibit D-72 that the costs from the first disputed subdivision cost center cited by Ellwood were reported costs.  *See* Bharat's Case Rebuttal Brief at 5-7, (Oct. 29, 2020) (P.R. 263) (C.R. 140) Appx090024-090026; Bharat's Verification Questionnaire Response, Exhibit D-72 at Appx087390-Appx087395; *see also* IDM at Appx083617 n.26 (citing Bharat's Verification Response, Exhibit D-72)*.*  Exhibit D-72 further demonstrates that the costs from this cost center were assigned to both MUC and non-MUC products.  Bharat's Case Rebuttal Brief at Appx090024-090026; Bharat's Verification Questionnaire Response, Exhibit D-72 at Appx087390-Appx087395.  Regarding the second disputed subdivision referenced by Ellwood, Bharat demonstrated how the total costs from the cost center report at Exhibit D-71 of Bharat's verification response reconciled to the calculation of the reported costs in Exhibits D-32.2 and D-32.6 of the June 11, 2020 second supplemental D response, as shown in Exhibit CB-2 of Bharat's rebuttal brief.  *See* Bharat Case Rebuttal Brief, Exhibit CB-2 at Appx090042-090043; *see also* IDM at Appx083617.  This demonstration shows that the costs for this subdivision related to both MUC and non-MUC products, and how the costs were reported accordingly.  *See* Bharat Case Rebuttal Brief, Exhibit CB-2 at Appx090042-090043; IDM at Appx083617.  The facts on the record show that Bharat responded to Commerce's request for information that verified Bharat's reported costs, and the cost centers and costs reported in Exhibit D-71 verified the costs Bharat had already reported through its questionnaire responses.  Therefore, the Court should uphold Commerce's finding that Bharat accurately reported its fluid end block processing costs as reasonable and supported by substantial evidence.

## **CONCLUSION**

For these reasons, we respectfully request that the Court deny Ellwood's motion for judgment on the agency record and sustain Commerce's final determination and remand redetermination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

s/Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

| | |
|---|---|
| OF COUNSEL: | s/Sarah E. Kramer |
| W. MITCH PURDY | SARAH E. KRAMER |
| Attorney | Trial Attorney |
| U.S. Department of Commerce | U.S. Department of Justice |
| Office of the Chief Counsel for Trade | Civil Division |
|    Enforcement and Compliance | Commercial Litigation Branch |
| 1401 Constitution Avenue, NW | P.O. Box 480 |
| Washington, D.C. 20230 | Ben Franklin Station |
| Tel: (240) 482-5214 | Washington D.C. 20044 |
| Email: william.purdy@trade.gov | Tel: (202) 353-0537 |
| | Fax: (202) 353-2062 |
| | Email: sarah.e.kramer@usdoj.gov |
| | |
| May 10, 2022 | Attorneys for Defendant |

## **CERTIFICATE OF COMPLIANCE**

I hereby certify that the foregoing brief complies with the Rules of this Court in that it contains 8,790 words, including text, footnotes, and headings.

<u>/s/ Sarah E. Kramer</u>

## UNITED STATES COURT OF INTERNATIONAL TRADE

BEFORE:  THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| ELLWOOD CITY FORGE CO., *et al.*, | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) |
| UNITED STATES, | ) |
| | )   Court No. 21-00007 |
| Defendant, | ) |
| | ) |
| and | ) |
| | ) |
| BHARAT FORGE LIMITED, | ) |
| | ) |
| Defendant-Intervenor. | ) |
| | ) |

## **ORDER**

Upon consideration of plaintiffs' motion for judgment on the agency record, defendant's and defendant-intervenor's responses thereto, plaintiffs' reply, the administrative record, and all other pertinent papers, it is hereby

ORDERED that plaintiffs' motion is DENIED; and it is further

ORDERED that the Department of Commerce's determination is sustained; and it is further

ORDERED that judgment is entered in favor of the United States.


Dated: _____                    _____

New York, New York                                              Judge

33