Slip Op. No. 23-113

## UNITED STATES COURT OF INTERNATIONAL TRADE

ELLWOOD CITY FORGE CO.,
ELLWOOD NATIONAL STEEL CO.,
ELLWOOD QUALITY STEELS CO.,
and A. FINKL & SONS,

        *Plaintiffs,*

v.

UNITED STATES,

        *Defendant,*

   *and*

BHARAT FORGE LTD.,

        *Defendant-Intervenor.*

Before: Stephen Alexander Vaden,
Judge

Court No. 21-00007

## <u>OPINION</u>

[Granting Plaintiffs' Motion for Judgment on the Agency Record and remanding to Commerce with instructions to comply with *Regents*]

Dated:  August 11, 2023

*Jack A. Levy*, Cassidy Levy Kent (USA) LLP, of Washington, DC, for Plaintiffs Ellwood City Forge Co., Ellwood National Steel Co., Ellwood Quality Steels Co., and A. Finkl & Sons. With him on the brief were *Thomas M. Beline*, *Myles S. Getlan*, *James E. Ransdell, IV*, and *Nicole Brunda*.

*Sarah E. Kramer*, Trial Attorney, Commercial Litigation Branch, Civil Division, U.S. Department of Justice, of Washington, DC, for Defendant United States. With her on the brief were *Brian M. Boynton*, Principal Deputy Assistant Attorney General, *Patricia M. McCarthy*, Assistant Director, Commercial Litigation Branch, *W. Mitch Purdy*, Of Counsel, Office of the Chief Counsel for Trade Enforcement and Compliance, U.S. Department of Commerce.

*Lizbeth R. Levinson*, Fox Rothschild LLP, of Washington, DC, for Defendant-Intervenor Bharat Forge Limited. With her on the brief was *Brittany Renee Powell* and *Ronald M. Wisla*.

**Vaden, Judge:**  Plaintiffs Ellwood City Forge Co., Ellwood National Steel Co., Ellwood Quality Steels Co., and A. Finkl & Sons (collectively, Ellwood City) challenge Defendant Department of Commerce's (Commerce) Final Determination as modified by the results following the requested voluntary remand in its antidumping investigation of forged steel fluid end blocks from India.  Pls.' Revised Mot. for J. on the Agency R. at 1 (Pls.' Revised Mot.), ECF No. 33; *see Forged Steel Fluid End Blocks from India:  Final Negative Determination of Sales at Less Than Fair Value* (Negative Determination), 85 Fed. Reg. 80,003 (Dec. 11, 2020); Final Results of Redetermination Pursuant to Court Remand (Remand Results), ECF No. 29.  Ellwood City argues that substantial evidence fails to support Commerce's determination that Defendant-Intervenor Bharat Forge Ltd. (Bharat) did not dump forged steel fluid end blocks at less than fair value and that Commerce did not comply with its statutory obligation to conduct on-site verification.  Pls.' Revised Mot. at 1–3, ECF No. 42.  For the reasons set forth below, the Court **GRANTS** Plaintiffs' Motion for Judgment on the Agency Record and **REMANDS** the case to Commerce for further proceedings consistent with this opinion.

# BACKGROUND

The products at issue in this case are forged steel fluid end blocks produced in India for import into the United States. Commerce described the covered merchandise in its announcement of the investigation's initiation:

> The products covered by this investigation are forged steel fluid end blocks (fluid end blocks), whether in finished or unfinished form, and which are typically used in the manufacture or service of hydraulic pumps.
>
> The term "forged" is an industry term used to describe the grain texture of steel resulting from the application of localized compressive force. Illustrative forging standards include, but are not limited to, American Society for Testing and Materials (ASTM) specifications A668 and A788. . . .
>
> The products covered by this investigation are: (1) Cut-to length fluid end blocks with an actual height (measured from its highest point) of 8 inches (203.2 mm) to 40 inches (1,016.0 mm), an actual width (measured from its widest point) of 8 inches (203.2 mm) to 40 inches (1,016.0 mm), and an actual length (measured from its longest point) of 11 inches (279.4 mm) to 75 inches (1,905.0 mm); and (2) strings of fluid end blocks with an actual height (measured from its highest point) of 8 inches (203.2 mm) to 40 inches (1,016.0 mm), an actual width (measured from its widest point) of 8 inches (203.2 mm) to 40 inches (1,016.0 mm), and an actual length (measured from its longest point) up to 360 inches (9,144.0 mm). . . .
>
> A fluid end block may be imported in finished condition (i.e., ready for incorporation into a pump fluid end assembly without further finishing operations) or unfinished condition (i.e., forged but still requiring one or more finishing operations before it is ready for incorporation into a pump fluid end assembly). Such finishing operations may include: (1) Heat treating; (2) milling one or more flat surfaces; (3) contour machining to

custom shapes or dimensions; (4) drilling or boring holes;
(5) threading holes; and/or (6) painting, varnishing, or
coating.

*Forged Steel Fluid End Blocks from the Federal Republic of Germany, India, and*
*Italy: Initiation of Less-Than-Fair-Value Investigations* (Initiation of Investigations),
85 Fed. Reg. 2,394, 2,399 (Jan. 15, 2020).

## I.     The Disputed Final Determination

On December 19, 2019, Ellwood City petitioned Commerce to initiate an
antidumping investigation into the importation of forged steel fluid end blocks from
Germany, India, and Italy.  Initiation of Investigations, 85 Fed. Reg. 2,394.  Bharat,
an Indian producer and exporter of fluid end blocks, was selected as a respondent in
the petition that initiated the investigation.  *Id.* at 2,397–98.  Commerce sent Bharat
a standard antidumping questionnaire on January 22, 2020.  Decision Memorandum
for the Preliminary Negative Determination at 3 (PDM), J.A. at 4,179, ECF No. 43.
The agency issued further supplemental questionnaires to Bharat from March to July
2020; and Bharat, with the grant of some extensions, submitted timely responses.  *Id.*

Bharat's responses were vital to Commerce's determination of the
antidumping margin because there is no domestic Indian market for fluid end blocks.
Consequently, Commerce calculated the dumping margin using the constructed value
of the goods in question, encompassing Bharat's costs of production, sales figures,
general and administrative expenses, and profits.  *See* 19 U.S.C. § 1677b(e); PDM at
4, J.A. at 4,180, ECF No. 43; Commerce Antidumping Questionnaire at Section D

(Jan. 22, 2020), J.A. 80,098–117, ECF. No. 44.  In response to Bharat's answers to Commerce's initial questionnaire, Ellwood City filed comments challenging Bharat's submissions and alleging that Bharat had failed to cooperate.  Deficiency Comments Concerning Section D Questionnaire Response of Bharat Forge (Section D Deficiency Comments) at 1–43, J.A. 83,140–83 (Apr. 7, 2020), ECF No. 44; Petitioners' Comments in Advance of the Preliminary Determination at 11–38 (Jan. 24, 2020), J.A. at 83,228–66, ECF No. 44.

During the period in which Bharat submitted its questionnaire responses, the World Health Organization classified COVID-19 as a pandemic.  *WHO Director-General's opening remarks at the media briefing on COVID-19 - 11 March 2020*, WORLD HEALTH ORGANIZATION (Mar. 11, 2020), https://bit.ly/3Ed8Fdj.  On March 15, 2020, the Department of Commerce issued an agency-wide memo prohibiting all travel not "mission-critical and pre-approved by senior bureau leadership."  DEP'T OF COMMERCE, *All Hands: Coronavirus Update (3-16-20)*, https://bit.ly/commercecoronavirus.  The Centers for Disease Control issued a Level 4 travel advisory, urging all U.S. citizens to avoid international travel on March 31, 2020.  CENTERS FOR DISEASE CONTROL AND PREVENTION, Global Level 4 Health Advisory:  Do Not Travel (Mar. 31, 2020).  During this period, Petitioners repeatedly noted that there was uncertainty surrounding Commerce's ability to conduct an effective on-site verification.  *See, e.g.*, Section D Deficiency Comments at 2, J.A. at

83,141, ECF No. 44; Deficiency Comments on Bharat Forge Limited's Supplemental

Section A Questionnaire Response at 2 (Apr. 27, 2020), J.A. at 87,573, ECF No. 44.

On March 26, 2020, Commerce postponed issuance of the results of the

preliminary investigation until July 16, 2020. *See Forged Steel Fluid End Blocks*

*from the Federal Republic of Germany, India and Italy: Postponement of Preliminary*

*Determinations in the Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 17,042

(Mar. 26, 2020). Based on the initial information gathered from Bharat, Commerce

issued a Preliminary Negative Determination of Sales at Less Than Fair Value with

the preliminary dumping margin for Bharat set at zero. *Forged Steel Fluid End*

*Blocks from India: Preliminary Negative Determination of Sales at Less Than Fair*

*Value, Postponement of Final Determination* (Preliminary Determination), 85 Fed.

Reg. 44,517–18 (July 23, 2020). Commerce also stated that it "intends to verify the

information relied upon in making its final determination concerning the estimated

weighted-average dumping margin calculated for Bharat." *Id.* at 44,518.

In response to Commerce's preliminary determination, Ellwood City filed

comments proposing two alternatives: Either (1) Commerce should disregard

Bharat's inaccurate cost allocations, cancel verification, and apply adverse inferences

drawn from facts otherwise available to the entirety of Bharat's submissions, or (2)

Commerce should ask questions Ellwood City suggested "in the event that Commerce

conducts verification or issues a verification outline." Petitioners' Comments

Following Preliminary Determination at 19–25, J.A. at 83,321–27, ECF No. 44.

Instead of performing on-site verification, Commerce issued what it called a "Questionnaire in Lieu of Verification" to Bharat on September 2, 2020. Questionnaire in Lieu of Verification, J.A. at 83,332–38, ECF. No. 44.  Ellwood City expressed misgivings about Commerce's decision, noting that Commerce's questionnaire "contains significantly fewer topics than complete sales and cost verification agendas."  Petitioners' Opposition to Second Extension at 3 (Sept. 11, 2020), J.A. at 87,606, ECF No. 44.  Even Bharat expressed some concerns about the process by reaching out to Commerce and suggesting the possibility of conducting a "virtual verification" via teleconference.  Bharat Possibility of Virtual Verification to Respond to Questions at 1– 2 (Oct. 7, 2020), J.A. at 87,616–17, ECF No. 44.

Bharat submitted its responses to the questionnaire on September 15, 2020. Bharat Response to Questionnaire in Lieu of On-Site Verification, J.A. at 87,367, ECF No. 44.  Bharat sought to answer Commerce's request for more specificity surrounding its cost centers[1] by providing Exhibit D-71.  *Id.* at 6–8, Ex. D-71.  The exhibit provided a detailed breakdown of location-specific costs with subcategories including general and administrative expenses and manufacturing costs such as

---

[1] The Oxford English Dictionary defines cost centers as follows:

> (a) Chiefly Accounting a part of an organization to which costs may be charged for accounting purposes; (b) Business a section of an organization that adds to costs and does not generate revenue directly; frequently in contrast to profit centre.

OXFORD ENGLISH DICTIONARY (Aug. 2023), https://tinyurl.com/33jh6mx9.

forging and machining.  *Id.* at Ex. D-71.  Commerce asked Bharat about these cost

centers because properly allocating costs to the production of the subject merchandise

is essential to the accurate calculation of the constructed value of the goods.  *See* 19

U.S.C. § 1677b(e).

On October 16, 2020, Ellwood City filed its administrative case brief and again

charged that Bharat had falsified evidence and had "***failed verification***."

Administrative Case Brief at 12, J.A. at 83,444, ECF No. 44 (emphasis in original).

It argued that Bharat's new submissions revealed that the company had intentionally

misreported the costs allocated to fluid end block production in its original

submissions.  *Id.* at 12–13.  Ellwood City also argued that Bharat had underreported

its general and administrative expenses.  *Id.* at 18–26.  To illustrate its argument,

Ellwood City compared the revised Exhibit D-71 with Bharat's previous submissions

and claimed that Bharat had left general and administrative expenses from two cost

centers out of its allocation ratio.  *Id.*  This omission, according to Ellwood City,

artificially lowered Bharat's general and administrative expenses attributable to

fluid end block production.  *Id.* at 25.  Lower production costs make a finding of

dumping less likely by lowering the value against which Commerce compares U.S.

sales prices.

Bharat filed its rebuttal brief on October 29, 2020.  Rebuttal Brief of Bharat

Forge Limited, J.A. at 90,018, ECF No. 44.  Bharat contended that it had submitted

no new information but rather had simply provided a further breakdown of cost

allocations of the previously reported cost centers.  *Id.* at 3–4.  Because Ellwood City misunderstood Bharat's calculation method, Bharat asserted that Ellwood City had also mistakenly concluded that Bharat had underreported its costs.  *Id.* at 5–7. Bharat claimed that it did nothing more than calculate its general and administrative expenses by following the Department's standard methodology and instructions.  *Id.* at 7–10.

On November 23, 2020, Ellwood City requested that Commerce strike the allegedly new information that Bharat had submitted in its rebuttal brief.  *See* Petitioners' Request to Strike Portions of Bharat Forge's Rebuttal Brief at 1–9, J.A. at 90,050–58, ECF No. 44.  Commerce held a hearing via video teleconference to allow both parties to present their cases to the Department on November 16, 2020.  *In re* Forged Steel Fluid End Blocks from India (Hearing) at 1, J.A. at 83,537, ECF No. 44. In that hearing, counsel for Ellwood City complimented Commerce's use of a questionnaire in lieu of verification, stating "thankfully, you have issued verification questionnaires to Bharat Forge, and conducted what is in effect a virtual verification."  *Id.* at 12.  Throughout the hearing, Ellwood City's counsel referred to the questionnaire as a "verification questionnaire" and argued that Bharat had "failed to satisfy the objectives set out in Commerce's verification questionnaire."  *Id.* at 16, 18–22, 25.

Nonetheless, in its final Issues & Decision Memorandum (IDM), Commerce stated that it "was unable to conduct on-site verification of the information relied

upon in making its final determination in this investigation, as provided for in section
782(i) of the Act." IDM at 2, J.A. at 83,613, ECF No. 44. Commerce then relied on
the unverified information as facts otherwise available under 19 U.S.C. § 1677e(a)(2)
to calculate Bharat's dumping margin. *Id.* It refused Ellwood City's invitation to
apply adverse inferences to the entire record. Instead, Commerce only drew adverse
inferences to fill selected gaps in Bharat's submissions — net weight reporting,
certain component costs, and sales of two particular products — because in these
instances Bharat failed to provide the information Commerce requested. *Id.* at 3-4,
8–10. The agency, however, relied on the remainder of Bharat's submitted data
because "in general, Bharat complied with our requests for information, acted to the
best of its ability to be transparent in its response, and supplied supporting
information that was in greater detail than that contained in prior submissions." *Id.*
at 5. Commerce thus rejected Ellwood City's claims that Bharat underreported its
production costs and its general and administrative expenses. *Id.* at 5–7. Because of
the limited application of adverse inferences, Bharat retained its zero percent
dumping margin from the preliminary determination. *See* Final Negative
Determination, 85 Fed. Reg. at 80,004.

## II.    The Present Dispute

Ellwood City filed suit on January 8, 2021. *See* Summons, ECF No. 1. It
challenged the legality of Commerce's failure to perform verification, alleged that
Commerce unlawfully accepted new information in Bharat's rebuttal brief, and

asserted that substantial evidence does not support Commerce's acceptance of Bharat's cost allocations and expense calculations. *See* Compl. ¶¶ 23–39, ECF No. 8; Pls.' Mot. for J. on Agency Record (Pls.' Mot.) at 17–18, 32–44, ECF No. 22.

Commerce moved for a voluntary remand "to reconsider its position on the questionnaire in lieu of on-site verification and subsequent application of facts available in this investigation." Def.'s Resp. and Mot. for Voluntary Remand (Mot. for Remand) at 5–6, ECF No. 24. The Court granted Commerce's Motion on October 29, 2021. Order Granting Voluntary Remand (Remand Order), ECF No. 28. The Court gave Commerce 150 days to reconsider its decision and permitted Commerce "at its discretion to perform on-site verification, which would moot all procedural issues created by the agency's decision to short-circuit verification." *Id.* at 5. The Court also noted that travel restrictions to India were now significantly relaxed so that on-site verification was once again possible. *Id.* Commerce had two options on remand under Supreme Court precedent: It could either give a fuller explanation of its reasoning at the time it made its decision, or it could take new agency action. *Id.*

Commerce — after taking the full 150 days — published its Remand Results. Final Results of Redetermination Pursuant to Court Remand (Remand Results), ECF No. 29. The agency did not perform on-site verification, nor did it take new action to verify the information on the record. Instead, Commerce "reconsidered our use of a questionnaire in lieu of on-site verification and no longer find that we were unable to verify Bharat's information." *Id.* at 4. Because of this new determination, the agency

no longer needed to rely on facts otherwise available for its final determination because it could rely on the now "verified" information. *Id.* Commerce also rejected Ellwood City's comments arguing that it did not comply with the remand by failing to conduct on-site verification. *Id.* at 7. It asserted that the verification statute gives it discretion in its procedures and that Ellwood City was pleased with the questionnaire during the investigation. *Id.* at 7–8. Because the agency could not have conducted an on-site verification in this investigation during the pandemic, it did not do so now and did not issue a verification report. *Id.* at 8–9.

On March 11, 2022, Ellwood City filed a Revised Motion for Judgment on the Agency Record, arguing that the Remand Results constitute a new agency action because they provide a new rationale. Pls.' Revised Mot. at 22, ECF No. 34 (noting that the agency's current position is "the direct opposite of Commerce's prior position"). It also asserts that substantial evidence does not support Commerce's finding of a *de minimis* dumping margin for Bharat because Bharat underreported its costs and general and administrative expenses. *Id.* at 2–3.

Commerce filed its response brief on May 10, 2022. Def.'s Resp., ECF. No. 38. The agency argues that it complied with the Remand Order and denies that it took new agency action. *Id.* at 24. Instead, it states that the "change in characterization regarding the verification questionnaire through the remand determination did not change the action taken by the agency" but simply "reconsidered and clarified [the] determination." *Id.* Defendant-Intervenor Bharat filed its corrected response brief

on May 23, 2022, contending that administrative exhaustion bars Ellwood City's argument that Commerce failed to comply with the verification statute.  Def-Int.'s Resp. at 2–5, ECF No. 40.   Ellwood City responded in its reply brief that exhaustion does not apply because Commerce's voluntary remand reopened the issue of verification.  Pls.' Reply at 12–16, ECF No. 41.

The Court held oral argument on October 20, 2022.  ECF No. 47.  Counsel for the Government maintained the position that Commerce had not taken new agency action on remand; instead, "it considered itself expounding on its previous reasoning." Transcript (Tr.) at 6:6–7, ECF No. 49.  Government counsel also affirmed that there was no reason that the Supreme Court's holding in *Regents* would not apply in the context of a voluntary remand.  *Id.* at 24:14–16 (Ms. Kramer:  "Your Honor, I don't necessarily see a distinction in applying it to an involuntary versus a voluntary remand.").

Counsel was unable to explain another oddity.  Commerce's position here is the exact opposite of its position in another case currently before the Court presenting the same legal issue.  *See Bonney Forge Corp. v. United States*, Case No. 20-03837. In that case — argued five days after this case — Commerce took the position that it *had* taken new agency action when it found on remand that it had properly complied with the verification requirement.  *See* Remand Results, ECF No. 61, Case No. 20-03837.  Agency counsel offices and the requirement that the Department of Justice manage all litigation for cabinet departments exist so that the Government does not

take contradictory positions on similar legal questions.  That consultation process completely failed in these cases.  In the future, Commerce should settle on one legal position before arriving in court rather than trying to literally have it both ways.  *Cf. Acquisition 362 LLC v. United States*, 59 F.4th 1247, 1251–52 (Fed. Cir. 2023) ("In the future, we expect Commerce will be both more specific and complete than it was initially about the sequence of government and party actions leading to the challenges presented to the CIT and on appeal.").

## STANDARD OF REVIEW

Federal Circuit precedent allows for an agency to request a voluntary remand — without confessing error — to reconsider its position.  *SKF USA Inc. v. United States*, 254 F.3d 1022, 1029 (Fed. Cir. 2001).  Although the scope of issues Commerce may reconsider in its remand can be broad, Supreme Court precedent limits the procedural avenues available to the agency.  An agency has two options on remand:

> First, the agency can offer a "fuller explanation of the agency's reasoning *at the time of the agency action*" . . . . This route has important limitations. When an agency's initial explanation "indicate[s] the determinative reason for the final action taken," the agency may elaborate later on that reason (or reasons) but may not provide new ones. Alternatively, the agency can "deal with the problem afresh" by taking *new* agency action. An agency taking this route is not limited to its prior reasons but must comply with the procedural requirements for new agency action.

*Dep't of Homeland Sec. v. Regents of the Univ. of California*, 140 S. Ct. 1891, 1907-08 (2020) (*Regents*) (internal citations omitted); *accord SKF*, 254 F.3d at 1028 ("In the second situation, in which the agency seeks to defend its decision on grounds not

previously articulated by the agency . . . . we generally decline to consider the agency's new justification for the agency action[.]"); *Timken Co. v. United States*, 894 F.2d 385, 389 (Fed. Cir. 1990) ("[A]gency action cannot be sustained on *post hoc* rationalizations supplied during judicial review.") (citations omitted).

"The court reviews remand determinations for compliance with the court's order." *Nakornthai Strip Mill Public Co. Ltd. v. United States*, 32 CIT 1272, 1274 (2008) (citations omitted); *accord Ad Hoc Shrimp Trade Action Comm. v. United States*, 992 F. Supp. 2d 1285, 1290 (CIT 2014), *aff'd*, 802 F.3d 1339 (Fed. Cir. 2015). "Deviation from the court's remand order in the subsequent administrative proceedings is itself legal error, subject to reversal on further judicial review." *Sullivan v. Hudson*, 490 U.S. 877, 886 (1989). The Court may also issue a further remand order when the remand results are not supported by substantial evidence or otherwise in accord with the law. *See Nippon Steel Corp. v. ITC*, 494 F.3d 1371, 1379 (Fed. Cir. 2007).

## DISCUSSION

### Commerce Failed to Comply with *Regents*

The primary issue facing the Court is whether Commerce complied with *Regents*. The agency could comply by either taking new agency action or giving further explanation of its original decision. However, Commerce in its Remand Results and briefing does not even cite *Regents*. Instead, it contradictorily asserts the following: (1) Commerce determines that it had verified Bharat's submissions

when it sent the original questionnaire in lieu of verification; (2) it rescinds its application of facts otherwise available, relying on the newly verified information in making its Final Determination; and (3) it maintains that these reversals of its prior positions "did not change the action taken by the agency."  Def.'s Resp. at 24, ECF No. 38.  Ellwood City counters that Commerce took new agency action because the Remand Results "reversed Commerce's 'prior reasons' with respect to verification." Pls.' Reply at 9, ECF No. 41 (citation omitted).  Commerce thus had to comply with the requirements of new agency action and verify the information on which it relied in making its final determination.  *Id.* at 10.  The Court finds that the case must be **REMANDED** back to the agency to comply with *Regents* because Commerce failed to do so here.

*Regents* gives an agency two paths on remand:  (1) The agency can offer a fuller explanation of its reasoning *at the time* it made the decision in question; or (2) the agency can take *new* agency action and provide *new* reasoning for that action.  140 S. Ct. at 1907–08.  When offering a fuller explanation on remand, an agency may only refer to the agency's reasoning "at the time of the agency action" and "may not provide new [reasons] to prevent 'post hoc rationalization.'"  *Id.*  (citations omitted). Alternatively, when taking new agency action, an agency "is not limited to its prior reasons but must comply with the procedural requirements for new agency action." *Id.* at 1908.  For example, "when an agency rescinds a prior policy its reasoned analysis must consider the 'alternative[s]' that are 'within the ambit of the existing

[policy].'" *Id.* at 1913 (quoting *Motor Vehicle Mfrs. Assn. of United States, Inc. v. State Farm Mut. Automobile Ins. Co.*, 463 U.S. 29, 43 (1983)).  And, when deviating from consistent past practice or policy, an agency "must be cognizant that longstanding policies may have 'engendered serious reliance interests that must be taken into account.'" *Id.* (quoting *Encino Motorcars, LLC v. Navarro*, 136 S. Ct. 2117, 2126 (2016) (quoting *FCC v. Fox Television Stations, Inc.*, 556 U.S. 502, 515, (2009))).

These two paths offered by *Regents* map onto the Federal Circuit's opinion in *SKF*, which explains the five different approaches an agency may adopt when agency action is subject to judicial review.  254 F.3d at 1027–1030.  First, an agency may defend its decision on "the grounds articulated by the agency," and a remand does not normally come into play.  *Id.* at 1028.  Second, an agency seeks to defend its decision "on grounds not previously articulated by the agency," and here, the court's obligation is to "decline to consider the agency's new justification."  *Id.* at 1028.  This second situation accords with *Regents*, which extended the bar on *post hoc* rationalizations from the famed *Chenery* case to include agency justifications on remand.  *See Sec. & Exch. Comm'n v. Chenery Corp.*, 332 U.S. 194, 196 (1947); *Regents*, 140 S. Ct. at 1907–08.  Third, an agency may "seek a remand because of intervening events outside of the agency's control, for example, a new legal decision or the passage of new legislation."  *SKF*, 254 F.3d at 1028.  In this case, *Regents* requires that the agency take new agency action if it is to change its position in light of the intervening event. *Regents*, 140 S. Ct. at 1907–08.  Fourth, "even if there are no intervening events, the

agency may request a remand (without confessing error) in order to reconsider its previous position." *SKF*, 254 F.3d at 1029. *Regents* also requires that the agency take new agency action if it wishes to change its previous position in this situation. *Regents*, 140 S. Ct. at 1907–08. Fifth, when an agency admits that it has erred and wishes for a remand to change its previous decision, here too an agency must comply with all the procedural requirements of new agency action under *Regents*. *See SKF*, 254 F.3d at 1029.

Commerce has failed to comply with either pathway offered by *Regents*. In its briefs and at oral argument, the Government claimed that the agency had simply given a fuller explanation of its original decision in its Remand Results. *See* Def.'s Resp. at 24, ECF No. 38; Tr. at 6:6–7, ECF No. 49. If this were an accurate description of what occurred, the agency is guilty of an "impermissible *post hoc* rationalization." *Regents*, 140 S. Ct at 1908 (internal quotation marks omitted). Its Remand Results purporting to clarify the original action taken instead contradict and reverse Commerce's original position. *Compare* IDM at 2, J.A. at 83,613, ECF No. 44 (explaining that Commerce "was unable to conduct on-site verification of the information relied on in making its final determination in this investigation, as provided for in section 782(i) of the Act"), *with* Remand Results at 4, ECF No. 29 (stating that the agency "reconsidered our use of a questionnaire in lieu of on-site verification and no longer find that we were unable to verify Bharat's information"). Commerce did not further explain the rationale of its original decision; it switched to

a new rationale for an entirely different position. *Cf. Regents*, 140 S. Ct. at 1907-08. In short, Commerce took new agency action without complying with the procedural requirements for that action. *Cf.* Tr. at 6:6–7, ECF No. 49 ("Yes, Your Honor, it [the agency] considered itself expounding on its previous reasoning."). *Regents* requires Commerce to make that decision "afresh" and to explain why the prior questionnaire it sent was sufficient and no additional verification was needed in the post-pandemic world of 2022, *i.e.*, during the remand period. Commerce also failed to discuss why its departure from its past practice of on-site verification did not harm Plaintiffs' reliance interests or why it rejected other alternatives, as *Regents* demands. *Compare Regents*, 140 S. Ct. at 1913 (explaining that an agency "must consider the 'alternative[s]' that are 'within the ambit of the existing [policy],'" explain why it did not choose those alternatives, and that "serious reliance interests . . . must be taken into account") (alternations in original, citations omitted), *with* Remand Results at 9, ECF No. 29 (considering only the possibility of an on-site verification, ignoring other alternatives such as a virtual verification, and failing to discuss reliance interests).

Commerce's own decisions have greatly complicated its legal position. When first brought to court, Commerce declined to defend its original decision on the merits. It instead asked for a voluntary remand to reconsider its verification decision. That allowed Plaintiffs to assert an argument they may well have otherwise waived — that the verification process was insufficient. *Compare* Remand Results at 7–8 (quoting Plaintiffs thanking the agency for issuing a verification questionnaire), *with Ellwood*

*City Forge Co. v. United States*, No. 1:21-00077, 2023 CIT LEXIS 113, at *12 (CIT

July 24, 2023) (holding that, when an agency asks for a voluntary remand, it typically

"obviate[es] any concern that failure to exhaust" by the plaintiff prohibits the agency

from considering the question on which it seeks remand).   Commerce then chose to

reverse its prior position, but it ignored this Court's admonition to follow the Supreme

Court's *Regents* opinion and disclaimed that it was making a new decision.  *See, e.g.*,

Remand Order at 5, ECF No. 28 ("As the *Regents* Court noted, Commerce has two

options on remand.").   An agency is free to reverse its prior position, but it may only

do so by taking new agency action.   Having chosen to reverse itself and now assert

that it did verify Bharat's information, Commerce cannot short circuit the procedural

requirements for new agency action:  (1) an explanation for why it now chooses not to

do on-site verification, (2) an explanation for the range of other alternatives the

agency considered within the ambit of on-site verification and why it rejected them,

and (3) an explanation for why its decision to use only questionnaires did not violate

any legitimate reliance interests on Plaintiffs' part.  *Regents*, 130 S. Ct. at 1907-08,

1913.   Because Commerce ignored *Regents*, its Remand Redetermination is not

supported by substantial evidence, fails to comply with the law, and therefore must

be returned to the agency.

## CONCLUSION

        Commerce has changed its mind regarding whether it verified the information

it received from Bahrat during its investigation of imports of fluid end blocks from

India.  Unfortunately, it did not follow the necessary procedural prerequisites that must follow a decision to reverse course.  Consequently, it is:

**ORDERED** that Plaintiffs' Motion for Judgment on the Agency Record is **GRANTED**;

The Court **REMANDS** the case for up to 150 days for Commerce to comply with the requirements of the *Regents* decision; and it is

**ORDERED** that Defendant shall supplement the administrative record with all documents considered by Commerce in reaching its decision in the Second Remand Redetermination; and it is further

**ORDERED** that Plaintiffs shall have 30 days from the filing of the Second Remand Redetermination to submit comments to the Court;

**ORDERED** that Defendant shall have 15 days from the date of Plaintiffs' filing of comments to submit a response; and

**ORDERED** that Defendant-Intervenor shall have 15 days from the date of Defendant's filing of comments to submit a response.

**SO ORDERED.**


                                                    /s/ Stephen Alexander Vaden
                                                         Judge


Dated: August 11, 2023
         New York, New York