# UNITED STATES COURT OF INTERNATIONAL TRADE
## BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

|  |  |
|---|---|
| ELLWOOD CITY FORGE CO., ELLWOOD NATIONAL STEEL CO., ELLWOOD QUALITY STEELS CO., and A. FINKL & SONS,<br><br>    Plaintiffs,<br><br>  v.<br><br>UNITED STATES,<br><br>    Defendant,<br><br>  and<br><br>BHARAT FORGE LTD.,<br><br>    Defendant-Intervenor. | Case No. 21-00007<br><br>**NON-CONFIDENTIAL VERSION**<br><br>Business Proprietary Information Deleted from Brackets on Pages 5-10 |

---

## COMMENTS ON REMAND REDETERMINATION
## ON BEHALF OF PLAINTIFFS ELLWOOD CITY FORGE COMPANY, ELLWOOD QUALITY STEELS COMPANY, ELLWOOD NATIONAL STEEL COMPANY, AND A. FINKL & SONS

---

Paul K. Keith, Esq.
Jack A. Levy, Esq.

**Rock Creek Trade LLP**
900 19th Street, NW
Suite 600
Washington, DC 20006
(202) 230-6630
*Counsel for Plaintiffs*

Dated: March 8, 2024

**Table of Contents**

Page

I. FACTUAL BACKGROUND ................................................................................................ 2

II. ARGUMENT ......................................................................................................................... 3

    A. Standard of Review ..................................................................................................... 4

    B. The *Remand Results* are Unsupported by Substantial Evidence Because They Fail to Address the Implications of the Errors Discovered at Verification ................................................................................................................. 5

        1. Unreliable Mill Certificates ............................................................................ 5

        2. CONNUM Coding and Costs for Parts......................................................... 8

    C. Commerce Acted Inconsistently with Its Practice Regarding Verifications ........ 11

    D. The *Remand Results* are Not in Accordance with Law Because Commerce's Adverse Facts Available Plugs are Insufficient to Induce Cooperation ................................................................................................................ 12

III. CONCLUSION ................................................................................................................... 14

i

# Table of Authorities

Page(s)

**Statutes**

19 U.S.C. § 1677e(b)(1) ...................................................................................................13

**Court Decisions**

*Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).........................................4

*Dep't of Homeland Sec. v. Regents of the Univ. of California*.  140 S. Ct. 1891, 1907-08 (2020) .3

*Tianjin Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377, 1380 (Ct. Int'l Trade 2012)....................................................................................................................................4

*Tianjin Magnesium Int'l Co. v. United States*, 722 F. Supp. 2d 1322, 1328 (Ct. Int'l Trade 2010.4

*RHP Bearings Ltd. v. United States*, 288 F.3d 1334, 1347 (Fed. Cir. 2002)..................................11

*Government of Québec v. United States*, 567 F. Supp. 3d 1273, 1286 (Ct. Int'l Trade 2022) 11-12

*Nan Ya Plastics Corp., Ltd. v. United States*, 810 F.3d 1333, 1348 (Fed. Cir. 2016) ...................13

*Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1383 (Fed. Cir. 2003) ................................13

*Diamond Sawblades Manufacturers' Coalition v. United States,* 716 F.3d 1370 (Fed. Cir. 2013) ...................................................................................................................................................14

**Administrative Determinations**

*Forged Steel Fluid End Blocks From the Federal Republic of Germany, India, and Italy: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 2,394 (Jan. 15, 2020).................2

*Forged Steel Fluid End Blocks from India: Preliminary Negative Determination of Sales at Less Than Fair Value and Postponement of Final Determination*, 85 Fed. Reg. 44,517 (July 23, 2020) ...................................................................................................................................................3

*Emulsion Styrene-Butadiene Rubber from the Russian Federation: Final Affirmative Determination of Sales at Less Than Fair Value and Classification of the Russian Federation as a Non-Market Economy*, 87 Fed. Reg. 69,002 (Dep't of Commerce Nov. 17, 2002) (final affirm. determ.), and accompanying IDM ..............................................................................................9, 11

**Other Administrative Materials**

Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1, at 870 (1994..................................................................................12

UNITED STATES COURT OF INTERNATIONAL TRADE
BEFORE: THE HONORABLE STEPHEN ALEXANDER VADEN, JUDGE

| | |
|---|---|
| ELLWOOD CITY FORGE CO., ELLWOOD NATIONAL STEEL CO., ELLWOOD QUALITY STEELS CO., and A. FINKL & SONS, <br><br>  Plaintiffs, <br><br> v. <br><br> UNITED STATES, <br><br>  Defendant, <br><br> *and* <br><br> BHARAT FORGE LTD., <br><br>  Defendant-Intervenor. | Case No. 21-00007 <br><br> **CONFIDENTIAL VERSION** <br><br> Business Proprietary Information Deleted from Brackets on Pages 5-10 |

## PLAINTIFFS' COMMENTS IN OPPOSITION TO REMAND RESULTS

Pursuant to the Court's opinion and orders of August 11, 2023, and December 26, 2023, plaintiffs Ellwood City Forge Co., Ellwood National Steel Co., Ellwood Quality Steels Co., and A. Finkl & Sons (collectively, "Plaintiffs") respectfully submit these comments in opposition to the Final Results of Redetermination Pursuant to Second Court Remand of the United States Department of Commerce ("Commerce"). *See* Opinion and Order, Aug. 11, 2023, ECF No. 52 (Appx000007-000008) ("*Remand Order*"); Paperless Order, Dec. 26, 2023, ECF No. 55 (granting extension of time for Commerce to file remand results); Final Results of Redetermination Pursuant to Second Court Remand, Feb. 7, 2024, ECF No. 58 ("*Remand Results*").

1

This case stems from Plaintiffs' original challenge to the final determination in the less-than-fair-value investigation covering forged steel fluid end blocks from India. *See Forged Steel Fluid End Blocks From India*, 85 Fed. Reg. 80,003 (Dep't of Commerce Dec. 11, 2020) (final negative determ.) ("*Final Determination*") (Appx083628-083630), and accompanying Issues and Decision Memorandum ("IDM") (Appx083612-083627).[1]

For the reasons explained below, although Commerce conducted an on-site verification on remand, Commerce's *Remand Results* are unsupported by substantial evidence and not in accordance with law. Accordingly, Plaintiffs respectfully submit that this Court must again remand this matter to Commerce for further consideration.

## I.   FACTUAL BACKGROUND

Commerce initiated a less-than-fair-value ("LTFV") investigation on imports of forged steel fluid end blocks from India on January 8, 2020. *See Forged Steel Fluid End Blocks From the Federal Republic of Germany, India, and Italy: Initiation of Less-Than-Fair-Value Investigations*, 85 Fed. Reg. 2,394 (Jan. 15, 2020) (Appx080000-080005). Commerce selected Bharat Forge Limited ("Bharat Forge") as a mandatory respondent. From January 2020 through July 2020, Bharat Forge responded to questionnaires and multiple supplemental questionnaires from Commerce. Throughout this time, Plaintiffs submitted multiple deficiency comments to Commerce identifying deficiencies in Bharat Forge's reporting. Despite Plaintiffs' submission of pre-preliminary arguments concerning the accuracy of Bharat Forge's reporting, Commerce issued the *Preliminary Determination* on July 23, 2020, calculating a below *de minimis*

---

[1] In accordance with Section (d) of Joint Appendix Preparation in § 1581(c) Cases Assigned to Judge Vaden (Rev'd Feb. 17, 2021), this brief cites the Bates numbers corresponding to the confidential version of the joint appendix, but omits "PR" and "CR" style references.

preliminary estimated weighted-average dumping margin for Bharat Forge. *Forged Steel Fluid End Blocks from India: Preliminary Negative Determination of Sales at Less Than Fair Value and Postponement of Final Determination*, 85 Fed. Reg. 44,517 (July 23, 2020) ("Preliminary Determination") (Appx083300-083302), and accompanying IDM ("Prelim IDM") (Appx083287-083299).

Although Commerce stated an intent to verify in its *Preliminary Determination*, Commerce instead issued a "questionnaire in lieu of performing an on-site verification" to Bharat Forge. *See* Letter from Commerce to Bharat (Sep. 3, 2020) ("Bharat Questionnaire in Lieu of Verification") (Appx083332-083338). Following briefing, Commerce issued a final negative determination of sales at less-than-fair-value for Bharat Forge. *Final Determination* (Appx083628-083630).

Plaintiffs challenged Commerce's determination not to conduct an on-site verification before this Court. Following a voluntary remand where Commerce again did not conduct an on-site verification, this Court remanded to Commerce a second time with instructions to comply with the requirements of *Dep't of Homeland Sec. v. Regents of the Univ. of California*. 140 S. Ct. 1891, 1907-08 (2020) ("*Regents*"). Accordingly, on remand, Commerce conducted an on-site verification of Bharat Forge's sales and cost reporting from October 30, 2023, through November 7, 2023. Commerce issued the *Remand Results* on February 7, 2023, in which Commerce continued to calculate a below *de minimis* estimated dumping margin for Bharat Forge.

II. **ARGUMENT**

Plaintiffs respectfully request that the Court once again remand Commerce's *Remand Results*. As we explain below, despite taking new agency action in response to the *Remand*

3

NON-CONFIDENTIAL VERSION

*Order*, the *Remand Results* are unsupported by substantial evidence and not in accordance with law.

### A. Standard of Review

This Court will "hold unlawful any determination, finding, or conclusion found . . . to be unsupported by substantial evidence on the record, or otherwise not in accordance with law." 19 U.S.C. § 1516a(b)(1)(B). This standard applies equally to remand redeterminations. *See, e.g.*, *Tianjin Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377, 1380 (Ct. Int'l Trade 2012) (applying the standard of review to Commerce's remand redetermination).

To determine whether Commerce's decision is supported by substantial evidence, the Court examines whether the record contains "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Tianjin Magnesium Int'l Co., Ltd. v. United States*, 836 F. Supp. 2d 1377, 1380 (Ct. Int'l Trade 2012) (applying the standard of review to Commerce's remand redetermination). The substantial evidence standard also requires Commerce to "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." *Tianjin Magnesium Int'l Co. v. United States*, 722 F. Supp. 2d 1322, 1328 (Ct. Int'l Trade 2010) (quoting *Motor Vehicle Mfrs. Ass'n of the U.S., Inc. v. State Farm Mut. Auto. Ins. Co.*, 463 U.S. 29, 43, (1983)). In situations where "the agency has not considered all relevant factors, or if the reviewing court simply cannot evaluate the challenged agency action on the basis of the record before it, the proper course, except in rare circumstances, is to remand to the agency for additional investigation and explanation." *Fla. Power & Light Co. v. Lorion*, 470 U.S. 729, 744 (1985).

B. **The *Remand Results* are Unsupported by Substantial Evidence Because They Fail to Address the Implications of the Errors Discovered at Verification**

Plaintiffs acknowledge that Commerce complied with the *Remand Order* to the extent the *Remand Order* instructed Commerce to comply with the requirements of *Regents*, but Commerce is still required to render a determination supported by substantial evidence and in accordance with law. Here, Commerce's *Remand Results* are unsupported because Commerce fails to support its assertions that Bharat Forge's reporting errors discovered at verification were limited in scope. To the contrary, these errors implicate many different aspects of Bharat Forge's reporting and therefore should give rise to broader reliability concerns.

1. *Unreliable Mill Certificates*

In its dumping analysis, Commerce assigns each unique product a control number ("CONNUM") based on its physical characteristics, with each digit corresponding to a different characteristic. Commerce uses the CONNUMs to identify and match individual U.S. sales to sales in the comparison market, or, if there is no viable comparison market, to that CONNUM's constructed value, to determine whether U.S. price is below fair value. Here, because Bharat Forge has no viable comparison markets, Commerce compared its U.S. sales to the constructed value for each CONNUM, which was determined in part by aggregating the costs associated with each of the CONNUM characteristics. Notably, many of the CONNUM characteristics are determined by the chemical contents of the fluid end blocks (*e.g.*, the percentage content of chromium, nickel, copper, and molybdenum all determine different CONNUM characteristics). The percentages of these various elements are provided in mill certificates.

Additionally, the scope of the investigation covers forged steel fluid end blocks with, *inter alia*, [      ] content "greater than or equal to [

**NON-CONFIDENTIAL VERSION**

]." *Final Determination*, 85 Fed. Reg. at 80,004 (Appx083629). Bharat Forge reported all of its sales of fluid end blocks made from steel grade [     ] as having a [     ] content of [     ], which would make them non-subject merchandise. *See* Bharat Forge Section C Response at 14 (Appx081153) ("{F}or the [     ] Grade the [     ] content is [     ], therefore code [  ] has been reported.").

In the underlying investigation, Commerce examined the mill certificates submitted by Bharat Forge for the fluid end blocks produced from steel grade [     ] to determine whether the merchandise was properly reported as out of scope. Amazingly, Bharat Forge submitted what appeared to be the same mill certificate twice, [     ]. Specifically, one of the mill certificates, [     ], showed a [     ] content of [     ] percent, and the other, [     ], showed a [     ] content of [     ] percent. *See* Petitioner's Pre-Verification Comments (Oct. 20, 2023) at 5-6 (Appx090065-090066).

Thus, at the on-site verification for the remand proceeding, Bharat Forge presented the discrepancy with the mill test certificates as a minor correction. Except this time, the [     ] content on the mill test certificate for heat number [     ] was [     ] percent. Thus, not only has Bharat Forge presented the same mill test certificate for the same heat number with [     ] different [     ] content measurements, but this time the corrected [     ] content shows it to be in-scope merchandise. *See* Sales Verification Report (Dec. 11, 2023) at 3 (Appx090078)

Notably, although Bharat Forge presented only three mill certificates in its presentation of minor corrections, Commerce "identified that there were additional mill certificates for this

6

steel grade in Bharat's {Post Prelim Questionnaire} from this supplier which were not included in the minor correction package." *Id.* After examining these additional mill certificates, Commerce "found that of the fourteen mill certificates issued by [     ] during the {period of investigation}, four represent corrections to mill certifications already on the record." *Id.* Thus, not only has the same mill certificate now been submitted with three different amounts of [     ], but it took Commerce's probing to uncover additional mill certificate issues.

Moreover, Bharat Forge initially reported *all sales made from steel grade [     ] as having non-scope amounts of [     ]*. And yet all fourteen of the mill certificates now on the record show [     ]. Therefore, not only do the changing mill certificates undermine the reliability of the mill certificates themselves, the fact that the CONNUM coding supposedly based on mill certificates was incorrect for [     ] calls into question Bharat Forge's CONNUM reporting more broadly.

Commerce again dismisses any broader reliability concerns, despite the fact that Bharat Forge officials were "unable to determine why there are mill certificates with the [     ] heat numbers but [     ] amounts of [     ]. Commerce explained that it "reviewed mill test certificates for other steel grades and did not find this problem with respect to ingots used in the production of the other steel grades." *Remand Results* at 12. Commerce concluded that the "problem was only found with respect to steel grade [     ]; therefore, no adjustments were applied to the other steel grades." *Id.*

Commerce's explanation reveals a fundamental misunderstanding of the nature of the issue. Commerce fails to explain how reviewing a few additional mill certificates for other grades can establish the mill certificates themselves as accurate. The only thing Commerce can

7

do is confirm that the CONNUM characteristics were reported consistently with the mill certificates, but this does not establish that the mill certificates are reliable. For example, if Commerce had only reviewed the first mill certificate submitted for heat number [      ], which showed [                        ], Commerce could have compared that mill certificate with the CONNUMs showing a [   ] for molybdenum content and concluded that the reporting was accurate because the CONNUM showed [

].

Therefore, Commerce fails to grapple with the fundamental mill certificate reliability issue and instead concludes without substantial evidence that the reporting error is limited to steel grade [        ].

### 2. CONNUM Coding and Costs for Parts

Because Bharat Forge has no viable comparison markets, Commerce compared its U.S. sales to the constructed value for each CONNUM, which was determined in part by aggregating the costs associated with each of the CONNUM characteristics. At the cost verification, Commerce found that two CONNUMs "were reported with a physical characteristic for parts . . . but their reported costs did not include any part costs." Cost Verification Report at 18 (Appx090127). Commerce explained that it inspected "the supporting documents (purchase order, invoice, packing lists, etc.)," and found that one of the CONNUMs "should have been reported with additional costs for parts" and the other "should have been reported with a parts characteristic of zero." *Id.* (citing Cost Verification Exhibit 8 (Appx090308).

Importantly, "Verification is a spot check and is not intended to be an exhaustive examination of the respondent's business." *Monsanto Co. v. United States*, 698 F. Supp. 275, 281 (Ct. Int'l Trade 1988). In prior proceedings, Commerce has consistently found that errors

identified in spot checks call into question the broader reliability of a respondent's reporting. *See, e.g.*, *Emulsion Styrene-Butadiene Rubber from the Russian Federation: Final Affirmative Determination of Sales at Less Than Fair Value and Classification of the Russian Federation as a Non-Market Economy*, 87 Fed. Reg. 69,002 (Dep't of Commerce Nov. 17, 2002) (final affirm. determ.), and accompanying IDM at 32. Thus, errors in a respondent's CONNUM coding discovered at verification should call into question the reliability of the respondent's other reported CONNUMs.

Commerce, however, explained away the misreported "parts" characteristics. Commerce first explains that "the 'parts' characteristic is the last of 18 physical characteristics which makes up the CONNUM, indicating that it is the least significant physical characteristic in Commerce's definitions of like products." *Remand Results* at 11. But this explanation ignores the true problem, which is the misreporting of CONNUM costs. Here, because U.S. sales are compared with the CONNUM-specific constructed value, the issue is not only whether U.S. sales match to the correct CONNUM, but also whether that CONNUM's costs are properly reported. Therefore, discovering the underreporting of CONNUM costs cannot be waived away by merely explaining that the misreported characteristic "is the last of 18 physical characteristics."

Commerce also explained that "parts represent only [    ] percent of Bharat's total cost of manufacturing fluid end blocks{.}" *Remand Results* at 11. Commerce evidently makes these points in support of its conclusion that "{i}n each case the error was limited in size and application and their sum does not warrant an application of total {adverse facts available}." *Id.* Simply stating that the errors are too small to warrant total adverse facts available is not substantial evidence for the conclusion that the CONNUM coding is reliable. Notably, Plaintiffs did not argue before Commerce that the only solution for addressing these CONNUM errors was

9

total adverse facts available. Rather, Plaintiffs stated, "Commerce fails to explain how it can be certain of the reliability of the remaining CONNUMs when Commerce identified an error in two thirds of the examined CONNUMs." Commerce, however, fails to support its conclusion that the parts reporting for the remaining CONNUMs is reliable.

Commerce claims to have "examined the part costs reported for all CONNUMs and found errors in two of the 15 reported CONNUMs." *Remand Results* at 12. Notably, there are other CONNUMs with codes that indicate they include parts for which Bharat Forge reported no parts costs. *See* Bharat Forge Supplemental Section D Response (June 11, 2020) at Exhibit D-32.6. If there is an explanation for this, Commerce did not include it in its *Remand Results* or Cost Verification Report, despite supposedly examining the parts costs for all CONNUMs.

Moreover, Commerce's claim that it has "determined the *complete universe of errors* with regard to the parts costs are minor," *Remand Results* at 12 (emphasis added), is unsupported by record evidence because Commerce has not demonstrated how it determined the complete universe of errors. Commerce's conclusion is evidently based on its "inspection of the supporting documents (purchase order, invoice, packing lists, etc.)," Cost Verification Report at 18 (Appx090127) but it is unclear—and Commerce fails to explain—how the evidence cited at Cost Verification Exhibit 8 supports that conclusion. Indeed, the documents in Cost Verification Exhibit 8 appear to be [               ] and otherwise indecipherable. *See* Cost Verification Exhibit at CVE-8 (Appx090308-090377).

The substantial evidence standard requires that Commerce "articulate a satisfactory explanation for its action including a rational connection between the facts found and the choice made." Here, Commerce has failed to support any connection between the record evidence and

10

Commerce's conclusion that the reporting of parts costs for the remaining CONNUMs is reliable.

### C. Commerce Acted Inconsistently with Its Practice Regarding Verifications

Commerce acts arbitrarily when it treats similarly situated parties differently without explanation. *See, e.g.*, *RHP Bearings Ltd. v. United States*, 288 F.3d 1334, 1347 (Fed. Cir. 2002). Commerce has consistently found that errors identified in spot checks call into question the overall reliability of a respondent's reporting. *See, e.g. Emulsion Styrene-Butadiene Rubber from the Russian Federation: Final Affirmative Determination of Sales at Less Than Fair Value and Classification of the Russian Federation as a Non-Market Economy*, 87 Fed. Reg. 69,002 (Nov. 17, 2002), and accompanying IDM at 32. Here, Commerce has departed from its past practice by finding that Bharat Forge's reporting errors were limited.

Specifically, Commerce has not adequately explained why it believes the remainder of Bharat Forge's reported information, in particular concerning its CONNUM reporting based on mill certificates and its reporting of parts costs, is reliable when Commerce identified significant errors in the spot checks it performed. This Court has sustained Commerce's determination that errors uncovered in spot checks undermine the reliability of data more broadly. *See Government of Québec v. United States*, 567 F. Supp. 3d 1273, 1286 (Ct. Int'l Trade 2022) ("While the impact of the discovered errors, taken alone, on the proposed foreign currency adjustment may be small, Commerce could reasonably infer that there may remain other errors."). Commerce contends that *Government of Québec* actually supports its determination because Commerce did not apply an adverse inference and found the respondent's remaining data—not related to the unverified auditor's adjustment at issue—to be reliable. Although Commerce did not resort to total adverse facts available in *Government of Québec*, this Court nevertheless found, consistent

11

with Commerce's practice, that errors identified in spot checks suggest broader reliability issues. Notably, the respondent company in *Government of Québec* argued: "(i) the only errors identified were the five Euro-coded errors; (ii) Commerce checked all the other Euro-coded sales and found no errors; and (iii) Commerce's other spot-checking revealed no additional errors." *Government of Québec*, 567 F. Supp. at 1286. Despite these arguments, this Court sustained Commerce's determination to deny the claimed adjustment on the basis that "errors uncovered in a spot check undermine the reliability of data more broadly." *Id.*

Commerce's attempt to distinguish *Government of Québec* because that case did not involve total adverse facts available also fails. Although Plaintiffs indeed argued that total adverse facts available is appropriate given the breadth of errors identified at verification, Commerce fails to question the reliability of all the data related to even the discrete issues involving reporting errors. In particular, Commerce accepted the remaining mill certificates as reliable despite unexplained discrepancies and mistaken CONNUM coding; and Commerce accepted the reporting of parts costs despite failing to explain or support Commerce's determination that the parts reporting errors do not affect other CONNUMs.

Therefore, Commerce has provided insufficient explanation for treating similar situations differently, which makes Commerce's determination arbitrary.

D. **The *Remand Results* are Not in Accordance with Law Because Commerce's Adverse Facts Available Plugs are Insufficient to Induce Cooperation**

One of the goals of Commerce applying an adverse inference when relying on facts available is "to ensure that the party does not obtain a more favorable result by failing to cooperate than if it had cooperated fully. In employing adverse inferences, one factor {Commerce} will consider is the extent to which a party may benefit from its own lack of

12

cooperation." Statement of Administrative Action accompanying the Uruguay Round Agreements Act, H.R. Rep. No. 103-316, vol. 1, at 870 (1994) ("SAA"). Accordingly, the Court of Appeals for the Federal Circuit has affirmed Commerce's ability, when selecting an adverse facts available rate, to consider whether the rate is sufficient to induce cooperation. *See Nan Ya Plastics Corp., Ltd. v. United States*, 810 F.3d 1333, 1348 (Fed. Cir. 2016). As stated in *Nan Ya Plastics*, "Commerce's consideration of the deterrent effect of its determination reflects the law's expectation." *Id.*

Here, despite Commerce's identification of numerous errors and its application of partial adverse facts available, Commerce has calculated a zero percent dumping margin. To be sure, Commerce is not required to apply total adverse facts available to achieve a dumping margin no matter how small a reporting error might be; but Commerce has not even applied adverse facts available with respect to information implicated by the errors uncovered at verification, such as the misreporting of parts costs or the erroneous mill certificates.

Additionally, Commerce purports to have applied partial adverse facts available but seems not to appreciate that this means Commerce has found that Bharat Forge "has failed to cooperate by not acting to the best of its ability to comply with a request for information{.}" *See* 19 U.S.C. § 1677e(b)(1). Commerce instead explained, regarding the fact that Bharat Forge provided its erroneous mill certificates, that "{t}hese are not the actions of a non-cooperating party working to hide the only transactions upon which we found a dumping margin." *Remand Results* at 19. It is well established, however, that there is no intent element in the antidumping statute. Instead, as the Federal Circuit explained, "The statutory trigger for Commerce's consideration of an adverse inference is simply a failure to cooperate to the best of respondent's ability, regardless of motivation or intent." *Nippon Steel Corp. v. United States*, 337 F.3d 1373,

Case 1:21-cv-00007-SAV   Document 62   Filed 03/08/24   Page 17 of 19

NON-CONFIDENTIAL VERSION

1383 (Fed. Cir. 2003). Thus, whether or not a party is "working to hide" anything should not determine whether or not adverse inferences are appropriate.

Commerce's reliance on *Diamond Sawblades Manufacturers' Coalition v. United States* is also misplaced. 716 F.3d 1370 (Fed. Cir. 2013) ("*Diamond Sawblades*"). Commerce cites *Diamond Sawblades* for the proposition that, "where the errors identified are 'limited in their reliability undermining effect' to a defined subset of merchandise, then 'there is no substantial evidence to support' a determination that all of the supplied information is unreliable." *Remand Results* at 26 (citing *Diamond Sawblades*, 716 F.3d at 1366). In *Diamond Sawblades*, however, the Court explained that Commerce had not supported its finding that information was unreliable beyond a limited subset of information determined using a specific first-in first-out methodology. Thus, in *Diamond Sawblades*, there was indeed a defined limit to the extent of Commerce's reliability concerns, and on remand Commerce indeed applied adverse facts available with respect to that entire subset. Here, by contrast, Commerce has not demonstrated through substantial record evidence that the errors identified at verification do not implicate broader reliability issues.

In sum, Commerce's partial applications of adverse facts available are insufficiently adverse and do not comport with the cooperation inducing goal outlined in the SAA.

### III.   CONCLUSION

For the above reasons, Plaintiffs respectfully request that the Court again remand this case to Commerce for reconsideration, to render a decision supported by substantial evidence and otherwise in accordance with law.

NON-CONFIDENTIAL VERSION

*     *     *     *     *

Respectfully submitted,

Sincerely,

<u>/ s / Paul K. Keith</u>

Paul K. Keith, Esq.
Jack A. Levy, Esq.

**ROCK CREEK TRADE LLP**
900 19th Street, NW
Suite 600
Washington, DC 20006
 (202) 230-6630
*Counsel for Plaintiffs*

NON-CONFIDENTIAL VERSION

**Certificate of Compliance with Chambers Procedures 2(B)(1)**

The undersigned hereby certifies that the foregoing brief contains 4,571 words, exclusive of the caption block, table of contents, table of authorities, signature block, and certificates of counsel, and therefore complies with the maximum 10,000 word count limitation set forth in the Standard Chambers Procedures of the U.S. Court of International Trade.

By: /s/ Paul K. Keith

Paul K. Keith