**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE:  THE HONORABLE STEPHEN A. VADEN, JUDGE

| | | |
|---|---|---|
| ELLWOOD CITY FORGE COMPANY, | ) | |
| ELLWOOD NATIONAL STEEL COMPANY | ) | |
| ELLWOOD QUALITY STEELS COMPANY, | ) | |
| and A. FINKL & SONS, | ) | |
| | ) | |
| Plaintiffs, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| UNITED STATES, | ) | |
| | ) | Court No. 21-00007 |
| Defendant, | ) | NON-CONFIDENTIAL VERSION |
| | ) | BPI on pages 4, 5, and 13 |
| and | ) | |
| | ) | |
| BHARAT FORGE LIMITED, | ) | |
| | ) | |
| Defendant-Intervenor. | ) | |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'
COMMENTS IN OPPOSITION TO SECOND REMAND RESULTS**

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

PATRICIA M. MCCARTHY
Director

OF COUNSEL:
W. MITCH PURDY
Senior Attorney
U.S. Department of Commerce
Office of the Chief Counsel for Trade
    Enforcement and Compliance
1401 Constitution Avenue, NW
Washington, D.C. 20230
Tel: (240) 482-5214
Email: william.purdy@trade.gov

KARA M. WESTERCAMP
Trial Attorney
U.S. Department of Justice
Civil Division
Commercial Litigation Branch
P.O. Box 480
Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7571
Email: kara.m.westercamp@usdoj.gov

March 25, 2024

Attorneys for Defendant

## TABLE OF CONTENTS

STATEMENT OF FACTS ............................................................................................. 2

    I.    Underlying Investigation And First Remand Redetermination ............................ 2

    II.    Second Remand Redetermination.......................................................... 3

ARGUMENT ............................................................................................................ 5

    I.    Legal Standard ................................................................................ 5

    II.    Commerce's New Decision Following An On-Site Verification Complied With The Court's Order And Is Supported By Substantial Evidence ............................ 5

    III.    The Court Should Reject Ellwood's Various Arguments ...................................... 9

CONCLUSION ........................................................................................................ 15

## <u>TABLE OF AUTHORITIES</u>

<u>PAGE(S)</u>

### <u>CASES</u>

*Dep't of Homeland Sec. v. Regents the Univ. of* Ca.,
  140 S. Ct. 1891 (2020) ..................................................................................................3

*Diamond Sawblades Manufacturers' Coal. v. United States*,
  986 F.3d 1351 (Fed. Cir. 2021) ........................................................................... passim

*Ellwood City Forge Co. v. United States*,
  654 F. Supp. 3d 1268 (Ct. Int'l Trade 2023) ...........................................................1, 3

*F.lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*,
  216 F.3d 1027 (Fed. Cir. 2000) ...................................................................................7

*Government of Quebec v. United States*,
  567 F. Supp. 3d 1273 (Ct. Int'l Trade 2022) ...............................................13, 14, 15

*MacLean-Fogg Co. v. United States*,
  100 F. Supp. 3d 1349 (Ct. Int'l Trade 2015) ..............................................................5

*Nippon Steel Corp. v. United States*,
  337 F.3d 1373 (Fed. Cir. 2003) ...................................................................................6

*Shandong Huarong Machinery v. United States*,
  435 F. Supp. 2d 1261 (Ct. Int'l Trade 2006) ..............................................................6

*Yangzhou Bestpak Gifts & Crafts Co. v. United States*,
  716 F.3d 1370 (Fed. Cir. 2013) ...................................................................................9

*Zhejiang DunAn Hetian Metal Co., Ltd. v. United States*,
  652 F.3d 1333 (Fed. Cir. 2011) ...................................................................................6

### <u>STATUTES</u>

19 U.S.C. § 1516a(b)(1)(B)(i) ..............................................................................................5

19 U.S.C. § 1677e ..............................................................................................................10

19 U.S.C. § 1677e(a) .........................................................................................5, 7, 8, 12, 13

19 U.S.C. § 1677e(b) ...............................................................................................8, 12, 13

19 U.S.C. § 1677m(d) ..........................................................................................................5

19 U.S.C. § 1677m(i)..................................................................................................3, 4, 6

## **ADMINISTRTIVE DETERMINATIONS**

*Forged Steel Fluid End Blocks From India*,
   85 Fed. Reg. 80,003 (Dep't of Commerce Dec. 11, 2020) ......................................... 2

*Emulsion Styrene-Butadiene Rubber from the Russian Federation*,
   87 Fed. Reg. 69,002 (Dep't of Commerce Nov. 17, 2002)........................................ 13

**IN THE UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| ELLWOOD CITY FORGE COMPANY,<br>ELLWOOD NATIONAL STEEL COMPANY<br>ELLWOOD QUALITY STEELS COMPANY,<br>and A. FINKL & SONS,<br><br>   Plaintiffs,<br><br>   v.<br><br>UNITED STATES,<br><br>   Defendant,<br><br>   and<br><br>BHARAT FORGE LIMITED,<br><br>   Defendant-Intervenor. | Court No. 21-00007<br>NON-CONFIDENTIAL VERSION<br>BPI on pages 4, 5, and 13 |

**DEFENDANT'S RESPONSE TO PLAINTIFFS'**
**COMMENTS IN OPPOSITION TO SECOND REMAND RESULTS**

   Defendant, the United States, respectfully submits this response in opposition to Plaintiffs'

Comments in Opposition to Remand Results, filed by the plaintiffs, Ellwood City Forge Company,

Ellwood National Steel Company, Ellwood Quality Steels Company, and A. Finkl & Sons (collectively,

Ellwood), Pls. Cmnts., ECF Nos. 61, 62, concerning the Department of Commerce's second remand

redetermination filed in accordance with this Court's decision and remand order in *Ellwood City Forge*

*Co. v. United States*, 654 F. Supp. 3d 1268 (Ct. Int'l Trade 2023) (*Ellwood*).  *See* Final Results of

Redetermination Pursuant to Second Court Remand, ECF No. 58 (Feb. 7, 2024) (Second Remand

Redetermination).  The Court should sustain Commerce's second remand redetermination because they

comply with the remand opinion (which Ellwood concedes), and are supported by substantial evidence

and otherwise in accordance with law.

## STATEMENT OF FACTS

### I.     Underlying Investigation And First Remand Redetermination

On December 11, 2020, Commerce published the final negative determination in the antidumping duty investigation of forged steel fluid end blocks from India.  *See Forged Steel Fluid End Blocks From India*, 85 Fed. Reg. 80,003 (Dep't of Commerce Dec. 11, 2020) (final neg. determ.), Appx083628-083630, and accompanying Issues and Decision Memorandum (IDM), Appx083612-083627.  In the final determination, Commerce stated that because it had been unable to conduct on-site verification, it had requested additional supporting documentation and information in lieu of on-site verification and had relied on the information submitted on the record as facts available.  IDM at 2, Appx083613.

In October 2021, Commerce requested a voluntary remand to reconsider its position in this investigation regarding the in-lieu of on-site verification questionnaire and its subsequent reliance on facts available in its final determination, Def.'s Mot. for Vol. Remand (Def.'s Mot.) at 5-6, ECF No. 24, which the Court granted.  Order, ECF No. 28.  Commerce subsequently filed the remand redetermination on January 12, 2022, 75 days before the Court's deadline established in its October 29, 2021 Order.  Final Results of Redetermination Pursuant to Court Remand, ECF No. 29 (First Remand Redetermination).  In the first remand redetermination, Commerce reconsidered its use of the in-lieu of on-site verification questionnaire, and, because it was able to verify Bharat Forge Limited's (Bharat) information, determined that use of facts otherwise available (apart from certain instances) was not warranted.  *See generally id.*

On August 11, 2023, the Court held that Commerce's final determination, as modified

by the first remand redetermination, was not supported by substantial evidence and not in

accordance with the law.  *See Ellwood*, 654 F. Supp. 3d at 1278-79.  The Court ordered that, on remand,

Commerce must explain: (1) its decision not to conduct on-site verification in the First Remand

Redetermination; (2) the range of other alternatives considered within the ambit of on-site verification

and why those alternatives were rejected in favor of a questionnaire; and (3) why the decision to use the

in-lieu of verification questionnaire did not violate any legitimate reliance interests on the petitioners'

part.  *Id.*  The Court held that, on remand, the agency is "free to reverse its position, but it may only do

so by taking a new agency action" and must provide new reasoning for that action.  *Id.* at 1278 (citing

*Dep't of Homeland Sec. v. Regents the Univ. of Ca.*, 140 S. Ct. 1891, 1907-08 (2020)).

## II.   <u>Second Remand Redetermination</u>

On remand, Commerce conducted an on-site verification and verified all information on which it

had relied in making its final determination, consistent with 19 U.S.C. § 1677m(i)(1).  *See* Second

Remand Redetermination, Appx101242-101269.  To that end, Commerce consulted with parties, issued

cost and sales verification agendas to Bharat on October 23 and 25, 2023, respectively, and completed

sales and cost on-site verifications at Bharat's factory in Pune, India, between October 30 and November

7, 2023.  *Id.* at 3, Appx101244; *see also* Sales Verification Report, Appx099761-099783; Cost

Verification Report, Appx099784-099822.  Prior to verification, Commerce explained that it had

"significantly tailored its standard cost and sales verification agendas to address the petitioners'

concerns regarding heat treatment cost centers, heat treatment costs, {General & Administrative}

expenses, physical characteristics, molybdenum content of ingots used to produce one steel grade, *etc.*"

Second Remand Redetermination at 11, Appx101252.  As a result of verification, Commerce applied

partial facts available with an adverse inference in two instances.  *Id.* at 22, Appx101263.

In the second remand redetermination, Commerce explained that of the 18 physical

characteristics that make up the product control number (CONNUM), "parts" is the least significant, and where certain "bought out" parts were missing, those constituted only [      ] percent of Bharat's total cost of manufacturing.  *Id.*  Thus, Commerce rejected Ellwood's assertion that two thirds of the CONNUMs were incorrectly reported because Commerce had "examined the cost calculations for all fluid end blocks produced during the {period of investigation}," and Commerce found that Bharat's cost allocation methodology was reasonable for reporting purposes.  *Id.*  Indeed, Commerce "determined the complete universe of errors with regard to the parts costs are minor" because it only "found errors in two of the 15 reported CONNUMs."  *Id.* at 12, Appx101253.  As a result, Commerce applied partial facts available with an adverse inference with respect to missing costs for parts for two CONNUMs.  *Id.* at 23, Appx101264.

Second, Commerce applied partial facts available with an adverse inference to the molybdenum content for heats of a particular steel grade, [          ], and found all sales of that steel grade to be in scope, although "{f}our of the 14 mill test certificates for this producer and CONNUM combination were previously reported with non-scope molybdenum content."  *Id.* at 12, Appx101253.  Commerce's review of mill test certificates for other steel grades found this to be an isolated problem.  *Id.*  Thus, for all [   ] sales of the [          ] grade, Commerce assigned the highest individual dumping margin calculated for Bharat's other U.S. sales to all sales of that steel grade, with those [    ] sales accounting for only [    ] percent by volume (by unit) of Bharat's U.S. sales during the period of investigation.  *Id.* at 12-13, Appx101253-101254.

Third, Commerce examined Bharat's various heat treatments and determined that Bharat had correctly reported CONNUMs, which Ellwood had challenged.  *Id.* at 13-14, Appx101254-101255.  Commerce also rejected Ellwood's assertion that additional general & administrative expenses it had discovered at verification somehow undermined Bharat's entire reporting methodology.  *Id.* at 14-15,

Appx101255-101256.  Commerce determined that the additional expenses were minor and only

increased the reported general & administrative expense rate "from [        ] percent to [        ]

percent," which "can hardly be considered a significant finding."  *Id.* at 16, Appx101257.

Overall, Commerce also determined that it was not appropriate to apply total facts available with

an adverse inference based on the missing parts CONNUMs and molybdenum mill certificates because

the impact of these issues was limited, and did not extend to, or otherwise impact, the remaining

information on the record Bharat had provided and Commerce had verified.  *Id.* at 25-26, Appx101266-

101267.  Therefore, after performing on-site verification and applying partial facts available with an

adverse inference where appropriate, Commerce recalculated Bharat's estimated weighted-average

dumping margin, which continued to be zero percent.  *Id.* at 7, Appx101248.

## ARGUMENT

### I.  Legal Standard

In remand proceedings, the Court will sustain Commerce's determinations if they are "in

accordance with the remand order, are supported by substantial evidence, and are otherwise in

accordance with law."  *MacLean-Fogg Co. v. United States*, 100 F. Supp. 3d 1349, 1355 (Ct. Int'l Trade

2015) (citing 19 U.S.C. § 1516a(b)(1)(B)(i)).

### II.  Commerce's New Decision Following An On-Site Verification Complied With The Court's Order And Is Supported By Substantial Evidence

Consistent with the Court's remand order, Commerce conducted an on-site verification and

substantial evidence supports Commerce's determination to apply partial facts available with an

adverse inference in limited circumstances.  *See generally* Second Remand Redetermination,

Appx101242-101269.

The statute sets forth limited circumstances in which Commerce shall rely on facts available.

In particular, 19 U.S.C. § 1677e(a)(1) and (a)(2) provide that Commerce shall, subject to 19 U.S.C.

§ 1677m(d), apply facts otherwise available in reaching the applicable determination if necessary information is not on the record, or if an interested party:  (A) withholds information requested by Commerce; (B) fails to provide such information by the deadlines for submission of the information, or in the form and manner requested; (C) significantly impedes a proceeding; or (D) provides such information but the information cannot be verified as provided in 19 U.S.C. § 1677m(i).  Section 1677e(b) then provides that Commerce may use an adverse inference in selecting from among the facts otherwise available when a party fails to cooperate by not acting to the best of its ability to comply with a request for information.  In doing so, Commerce is not required to determine, or make any adjustments to, its analysis based on any assumptions about information an interested party would have provided if the interested party had complied with the request for information.  *See id.*

Accordingly, Commerce first must determine that it is proper to use facts otherwise available before it may apply an adverse inference.  *Zhejiang DunAn Hetian Metal Co., Ltd. v. United States*, 652 F.3d 1333, 1346 (Fed. Cir. 2011) (citing *Shandong Huarong Machinery v. United States*, 435 F. Supp. 2d 1261, 1289 (Ct. Int'l Trade 2006) ("Absent a valid decision to use facts otherwise available, Commerce may not use an adverse inference.")).  The use of facts otherwise available, moreover, is only appropriate to fill gaps when Commerce must rely on other sources of information to complete the factual record.  *Zhejiang*, 652 F.3d at 1346 (citing *Nippon Steel Corp. v. United States*, 337 F.3d 1373, 1381 (Fed. Cir. 2003)) (noting that "{t}he mere failure of a respondent to furnish requested information—for any reason—requires Commerce to resort to other sources of information to complete the factual record on which it makes its determination").  Indeed, the Court of Appeals for the Federal Circuit has previously found that substantial evidence did not support Commerce's application of total adverse facts available where a respondent's reporting created only a small gap in the record.  *See id.* at 1348.

Further, the Federal Circuit has explained that Commerce must "engage in an information-specific consideration of probativeness rather than any blanket disregard of all information supplied by a person whenever some of the information supplied by that person is unreliable." *Diamond Sawblades Manufacturers' Coal. v. United States*, 986 F.3d 1351, 1365 (Fed. Cir. 2021) (cleaned up). Where no information is missing from the record, and that information is not unverifiable, there is no reason to apply facts available, let alone adverse facts available. And where the errors identified are "limited in their reliability undermining effect" to a defined subset of merchandise, then "there is no substantial evidence to support" a determination that all the supplied information is unreliable. *Id.* at 1355. The Federal Circuit has further elaborated that the purpose of an adverse inference under the statute "is to provide respondents with an incentive to cooperate, not to impose punitive, aberrational, or uncorroborated margins." *F.lli de Cecco di Filippo Fara S. Martino S.p.A. v. United States*, 216 F.3d 1027, 1032 (Fed. Cir. 2000).

As Commerce explained in the second remand redetermination, Commerce applied partial facts available with an adverse inference in two instances. In other words, the information that Bharat had failed to report or misreported had created only a small gap in the record, and thus the application of partial facts available with an adverse inference, not total adverse facts available, was appropriate. *See* Second Remand Redetermination at 12, 23, Appx101253, Appx101264.

First, Commerce applied partial adverse facts available with an adverse inference with respect to the molybdenum content for heats of a particular steel grade, finding all sales of that steel grade to be in scope and assigned the highest individual dumping margin calculated for Bharat's other U.S. sales to all sales of that steel grade. *Id.* at 12, Appx101253. Commerce based this application of facts available on 19 U.S.C. § 1677e(a)(2)(D), as Bharat had provided information related to said steel grade that could not be verified. *Id.* Second, Commerce applied partial facts

7

available with an adverse inference with respect to missing costs for parts for two CONNUMs and increased the direct material costs for the CONNUM with unreported part costs by the highest amount of parts reported for any CONNUM. *Id.* at 5, 23, Appx101246, Appx101264. Specifically, in addition to the partial facts available with an adverse inference that Commerce applied to a CONNUM with missing parts costs in the underlying final determination, Commerce applied partial facts available with an adverse inference to another CONNUM with missing parts costs discovered at verification. *See* IDM at 9, Appx083620; Second Remand Redetermination at 5, Appx101246; Bharat's Second Remand Final Cost Analysis Memorandum at 1-2, Appx100978-100979. Commerce based this application of partial facts available on 19 U.S.C. § 1677e(a)(2)(A), as Bharat had withheld information related to missing costs for parts for two CONNUMs. Second Remand Redetermination at 23, Appx101264. In both instances, Commerce applied adverse inferences because it found Bharat had "failed to cooperate by not acting to the best of its ability to comply with a request for information" in accordance with 19 U.S.C. § 1677e(b). *Id.*

Contrary to arguments made by Ellwood, however, Commerce determined that the information Bharat had withheld or was unverifiable in the underlying proceeding was limited. *See id.* at 12, 23, Appx101253, Appx101264. It did not extend to, or otherwise affect, the other information that Bharat had timely provided in the form and manner requested, and that Commerce had verified through on-site, in-person verifications. *Id.* at 25, Appx101266; *see generally* Sales Verification Report, Appx099761-099783; Cost Verification Report, Appx099784-099811. Furthermore, Commerce did not find that "a reliability-undermining effect" extends beyond the withheld or unverified information to which Commerce had already applied partial facts available with an adverse inference. Second Remand Redetermination at 25, Appx101266 (citing *Diamond Sawblades*, 986 F.3d at 1366). Instead, the vast majority of the information verified and tests

Commerce performed throughout the verification did not uncover errors sufficient to justify the application of facts available or an adverse inference. *Id.* at 28, Appx101269. Substantial evidence and the law thus did not support applying an adverse inference to verified information, or an application of total adverse facts available to Bharat. *See id.* To the contrary, there was no factual or legal basis to apply facts available to the remainder of the record, let alone use an adverse inference in selecting from among those facts. *Id.* at 26, Appx101267; *see also Diamond Sawblades*, 986 F.3d at 1365; *Yangzhou Bestpak Gifts & Crafts Co. v. United States*, 716 F.3d 1370, 1379 (Fed. Cir. 2013) ("An overriding purpose of Commerce's administration of antidumping laws is to calculate dumping margins as accurately as possible.").

Thus, substantial evidence supports Commerce's explanation to apply partial facts available with an adverse inference to CONNUMs with missing parts costs and one grade of steel. *See* Second Remand Redetermination at 18-20, 25-26, Appx101259-101261, Appx101266-101267; *Diamond Sawblades*, 986 F.3d at 1365.

## III.    The Court Should Reject Ellwood's Various Arguments

Ellwood fails to show how Commerce's verification procedures and subsequent application of partial facts available with an adverse inference were unsupported by substantial evidence or otherwise contrary to law. *See generally* Pls. Cmnts.

First, Ellwood's argument that Commerce should have relied on total adverse facts available revolves entirely around the erroneous assumption that Commerce must proactively justify a decision *not* to rely on total adverse facts available when partial facts available with an adverse inference is otherwise appropriate. *See id.* at 5-10. The Court should reject this meritless argument.

For example, Ellwood argues that although Commerce reviewed mill test certificates for other steel grades and did not discover issues with respect to the molybdenum content of ingots used

9

in the production of other steel grades, Ellwood argues that "Commerce failed to explain how reviewing additional mill certificates for other grades can establish the mill certificates themselves as accurate." *Id.* at 7. However, this argument disregards the applicable legal standard. Here, Commerce determined it could not verify the reliability of certain mill certificates for a *single* steel grade, and thus appropriately applied facts available, as well as an adverse inference, in determining the margins for that particular steel grade. Second Remand Redetermination at 12, 23, Appx101253, Appx101264. But Commerce reviewed mill certificates for other steel grades at verification and was able to successfully verify the accuracy of the mill certificates for those steel grades. *Id.* at 12, Appx101253. Thus, extending Commerce's application of facts available with an adverse inference to *all* the mill certificates would be inconsistent with the language of 19 U.S.C. § 1677e, as would the application of total adverse facts available to the entire record. *See Diamond Sawblades*, 986 F.3d at 1366.

Likewise, Ellwood argues that because Commerce found errors in Bharat's CONNUM coding for two CONNUMs, Commerce should have therefore questioned the reliability of respondent's CONNUM reporting writ large. Pls. Cmnts. at 8-9. However, Commerce explained that it had reviewed the parts costs reported for all CONNUMs and had only found errors in two of the 15 reported CONNUMs. Second Remand Redetermination at 12, Appx101253 (citing Cost Verification Report at 2-3, 18, Appx099785-099786, Appx099801).

Indeed, due to the nature of the cost calculations, Commerce examined the cost calculations for all fluid end blocks produced during the period of investigation.[1] Second Remand

---

[1] Because Bharat does not calculate product specific actual costs in its normal books and records, Bharat calculated the actual costs of its period of investigation company-wide production. *See* Cost Verification Report at 6, Appx099789. Thus, Bharat reported and Commerce examined calculation worksheets that show how costs were allocated to all products produced, not just to the CONNUMs selected. While Commerce may have only retained excerpts of these worksheets in its exhibits to the

Redetermination at 11, Appx101252. For example, when discussing the calculation of direct material costs Commerce explained that it "reviewed Bharat Forge's worksheet demonstrating the calculation of the per-metric ton consumption cost of each ingot grade consumed in the production of FEBs." Cost Verification Report at 19, Appx099802. Commerce also explained that "{t}he direct material cost calculation worksheets also include a column for the addition of bought out part costs." *Id.* at 20, Appx099803. Bharat refers to the part costs as "bought out" parts because it does not produce them, but rather purchases the parts. *See id.* at 18-19, Appx099801-099802. As the Cost Verification Report demonstrates, Commerce "examined the cost buildup worksheets that Bharat Forge used to prepare the reported costs for all {fluid end blocks}" including selected CONNUMs. *Id.* at 3, Appx099786, Exhs. 6-10, 12, 13, Appx099535-099663, Appx099668-099709. Thus, the method of reporting Bharat had used for the parts costs required Commerce to review all CONNUMs as a part of its cost verification, not just the CONNUMs pre-selected for verification. *See* Cost Verification Report at 6, Appx099789.

Also, in reviewing Bharat's reported per-unit costs, Commerce reviewed all CONNUMs with respect to Bharat's calculation of product specific costs. *See id.* at 18, Appx099801. Included in this analysis, Commerce reviewed the parts costs reported for all CONNUMs, but only found errors in two of the 15 reported CONNUMs during on-site verification. Second Remand Results at 12, Appx101253. One of these CONNUMs was reported as a minor correction, and Commerce further reviewed supporting documents at verification to confirm the minor correction was accurate. Cost Verification Report at 2, Appx099785. Thus, one of the CONNUMs where Commerce found an error in Bharat's parts reporting during its on-site verification, which Commerce reviewed and ultimately accepted as a minor correction, was not even a CONNUM preselected for examination

---

verification report, every calculation worksheet is reported in its entirety on the record. *See* Bharat Forge Supp. Section D Resp. (June 11, 2020) at Exhibit D-32, Appx083712-083733.

prior to verification.  Cost Verification Report at 2-3, Appx099785-099786 (detailing the three

CONNUMs selected for review at verification); Second Remand Redetermination at 12,

Appx101253.

If, as Ellwood argues, Commerce had only reviewed the CONNUMs pre-selected prior to

verification, and did not perform any additional review at verification, Pls. Cmnts. At 11, Commerce

likely would not have verified Bharat's minor correction that the parts cost had been misreported for

the CONNUM in question.  Indeed, the documents in the cost verification report demonstrate that

Commerce reviewed additional CONNUMs outside of the pre-selected CONNUMs in determining

that the two CONNUMs at issue had been misreported and that the problem did not extend to other

CONNUMs.  *See* Second Remand Redetermination at 12, Appx101253.  Contrary to Ellwood's

assertion, Commerce was not required to somehow justify its decision to not apply total adverse

facts available beyond its finding that it was able to verify the remaining information on the record

with respect to both issues.  *See* 19 U.S.C. § 1677e(a), (b); *Diamond Sawblades*, 986 F.3d at 1355

(holding that where identified errors are "limited in their reliability undermining effect" to a defined

subset of merchandise, then "there is no substantial evidence to support" a determination that all the

supplied information is unreliable).

Although Ellwood now argues that they "did not argue before Commerce that the only

solution for addressing these CONNUM errors was total adverse facts available," Pls. Cmnts. at 9,

the practical effect of their argument that Commerce must justify *not* extending the application of

facts available with an adverse inference to otherwise verified information, fails to meet the legal

standards for reliance on facts available for the same reasons.  *See* 19 U.S.C. § 1677e(a), (b);

*Diamond Sawblades*, 986 F.3d at 1355.  If Commerce were to apply facts available with an adverse

inference to the entire record, or to all parts costs for all CONNUMs, both potential solutions would

result in the application of facts available where it is otherwise not warranted under the statute. *See* 19 U.S.C. § 1677e(a), (b). Indeed, Commerce explained that except for the missing CONNUM costs, "Bharat provided requested information in a timely manner in the form and manner requested" and that the withheld or unverifiable information "is limited." Second Remand Redetermination at 25, Appx101266. Commerce considered the "complete universe of errors with regard to the parts costs {to be} minor," as it affected only [    ] percent by volume (by unit). *Id.* at 12, 23, Appx101253, Appx101264. And the application of a partial adverse inference to the [        ] steel grade for molybdenum content applied to only [    ] percent by volume (by unit), and Commerce noted that "the information is from [                    ] and {it could} not verify [                    ] is accurate for [    ] heats." *Id.* at 23, Appx101264.

Further, precedent that Ellwood cites in support of their argument that Commerce should have extrapolated its findings regarding the mill certificates and parts cost reporting to the reliability of the entirety of the record is inapposite. *See* Pls. Cmnts. at 11-12 (citing *Emulsion Styrene-Butadiene Rubber from the Russian Federation*, 87 Fed. Reg. 69,002 (Dep't of Commerce Nov. 17, 2002) (final LTFV affirm. determ.), and accompanying IDM (*Rubber from Russia*); *Government of Quebec v. United States*, 567 F. Supp. 3d 1273, 1284-86 (Ct. Int'l Trade 2022)). In *Rubber from Russia*, the respondent's withholding of requested information prevented Commerce from segregating prime and non-prime merchandise, which significantly impeded the investigation and resulted in the entire home market and U.S. sales data being found unreliable. *Rubber from Russia* IDM at Comment 3. Unlike in *Rubber from Russia*, here the withheld or misreported information only impacted discrete portions of the data Bharat had submitted, and Commerce was able to verify that these issues did not persist beyond the instances in which Commerce relied on partial facts

13

available with an adverse inference. *See Second Remand Redetermination* at 12, 23, Appx101253, Appx101264.

Likewise, *Government of Quebec* concerns the application of partial facts available without an adverse inference, and contrary to the arguments made by Ellwood, Commerce's actions in that case support Commerce's decision *not* to apply total adverse facts available here. 567 F. Supp. 3d at 1284-86. In *Government of Quebec*, Commerce "explained that it conducts spot checks because it is unable to review every sale, but was satisfied with the accuracy of the data without the {information rejected as unreliable}." *Id*. at 1284. As a result, in that case Commerce found that "the vast majority of the sales-related and other tests Commerce performed throughout the verification uncovered no other errors." *Id.* Similarly, here, Commerce found that the vast majority of the information verified and tests that Commerce had performed throughout the verification did not uncover errors sufficient to justify the application of total facts available, much less total facts available with an adverse inference. *See Second Remand Redetermination* at 28, Appx101269. Thus, contrary to Ellwood's arguments, *Government of Quebec* does not stand for the premise that errors identified in a spot check *always* indicate broader reliability issues; only that they can "suggest" broader reliability issues. 567 F. Supp. 3d at 1284-1286*.*

Finally, Ellwood's efforts to distinguish *Diamond Sawblades* are also misplaced because Ellwood draws a distinction where none exists. Ellwood argues that "in *Diamond Sawblades* there was indeed a defined limit to the extent of Commerce's reliability concerns, and on remand Commerce indeed applied adverse facts available with respect to that entire subset." Pls. Cmnts. at 14. This is exactly what Commerce did in the underlying remand proceeding, where it applied partial facts available with an adverse inference to all sales of the impacted steel grade and further applied partial adverse facts available to missing costs for parts for two CONNUMs, including

14

increasing the direct material costs for a CONNUM with unreported part costs reviewed at the on-site verification by the highest amount of parts reported for any CONNUM.  Second Remand Redetermination at 5-6, 12, 23, Appx101246-101247, Appx101253, Appx101264.  In both instances, Commerce reviewed other information on the record at verification that could potentially suffer from the same deficiencies and confirmed that those errors did not affect the other information.  *See id.* at 12, Appx101253.  Instead of demonstrating additional errors that impugn the reliability of Bharat's reported information in its entirety, Ellwood relies solely on the discrete, isolated instances where Commerce has already applied partial facts available with an adverse inference to support the claim that Bharat's entire response should be disregarded.  The Court should reject this argument because it would require Commerce to apply facts available to information that has otherwise been verified and would necessarily contradict or otherwise ignore Commerce's confirmation at verification that these issues did not impact the reliability of other information on the record.  *See id.*

## CONCLUSION

For these reasons, we respectfully request that the Court sustain Commerce's second remand redetermination.

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

s/Patricia M. McCarthy
PATRICIA M. MCCARTHY
Director

OF COUNSEL:
W. MITCH PURDY
Senior Attorney
U.S. Department of Commerce
of the Chief Counsel for Trade
  Enforcement and Compliance
Constitution Avenue, NW

s/Kara Marie Westercamp
KARA M. WESTERCAMP
Trial Attorney
U.S. Department of Justice Office
Civil Division
Commercial Litigation Branch 1401
P.O. Box 480

15

Washington, D.C. 20230
Tel: (240) 482-5214
Email: william.purdy@trade.gov


March 25, 2024

Ben Franklin Station
Washington D.C. 20044
Tel: (202) 305-7571
Fax: (202) 514-8624
Email: kara.m.westercamp@usdoj.gov


Attorneys for Defendant

CERTIFICATE OF COMPLIANCE

     I hereby certify, pursuant to section 2(B)(1) of the Standard Chambers Procedures of this Court, that this brief contains 4,434 words, excluding the table of contents, table of authorities, any addendum containing statutes, rules or regulations, any certificates of counsel, and counsel's signature, as calculated by the word processing system used to prepare this brief (Microsoft Word).

s/ Kara M. Westercamp
KARA M. WESTERCAMP
Trial Attorney
Department of Justice
Civil Division

**UNITED STATES COURT OF INTERNATIONAL TRADE**

BEFORE: THE HONORABLE STEPHEN A. VADEN, JUDGE

| | |
|---|---|
| ELLWOOD CITY FORGE COMPANY, )<br>ELLWOOD NATIONAL STEEL COMPANY )<br>ELLWOOD QUALITY STEELS COMPANY, )<br>and A. FINKL & SONS, )<br> )<br> Plaintiffs, )<br> )<br> v. )<br> )<br>UNITED STATES, )<br> )<br> Defendant, )<br> )<br> and )<br> )<br>BHARAT FORGE LIMITED, )<br> )<br> Defendant-Intervenor. )<br> ) | Court No. 21-00007 |

**ORDER**

Upon consideration of the Department of Commerce's final results of redetermination pursuant to remand, defendant's response in support thereto, and all other pertinent papers, it is hereby

ORDERED that the second remand results are sustained in their entirety; and further

ORDERED that final judgment is entered in favor of the United States.

Dated:_____, 2024                    _____

New York, NY                                                    STEPHEN A. VADEN, JUDGE

18